JAMES P. MAGINN, Respondent, v. RICHARD D. LANCASTER, Appellant.

St. Louis Court of Appeals, March 17, 1903.

1. **Contract: NO LATENT AMBIGUITY: INTENTION OF PARTIES MUST PREVAIL.** B., O. and defendant were members of a corporation. B. borrowed money to pay his share of the amount to be expended by the corporation in the construction of a building to be erected on leased ground, and agreed to pay interest on the loan during the time of the lease. To insure payment of this interest, B., O. and defendant executed a contract referring to the contract of B. with the lender, providing, that out of the profits, or remaining rents of the building after payment of all expenses, taxes, and interest on the loan to B., there should be first refunded and paid out of the balance to O. and defendant, pro rata, on the respective amounts advanced by them, "until both such amounts should be paid in full, with interest at ten per cent. per annum," and that when such amounts, with interest, should be paid back, then B. should transfer to O. twenty-five shares of stock, so as to make equal the amount held by him and O., "after which any dividend declared upon said stock" should "be received by defendant, O. and B. in proportion to the amounts of stock held by them; *Held,* that the consideration for defendant's agreeing that the interest on the amount loaned B. should be a first charge on the income from the building, was the agreement of B. to forego participation in the dividends; and, *held,* further, that the consideration failed when defendant and O. were repaid the amounts advanced by them, and B. began sharing in the dividends, *then,* defendant's obligation ceased, and the agreement terminated, and he was not liable for interest on the loan from Y.

2. ———: ———: ———: **POOL WAS DISSOLVED.** Plaintiff claimed that the parties themselves, by continuing the pool for three years after B. became entitled to dividends on his stock, construed the contract as continuing the pool to the end of the lease. *Held,* that it appearing from the evidence that defendant protested against contributing to the interest on the loan after that time, plaintiff's contention was untenable.

3. ———: ———: ———. The contract should be construed as a whole, and not by piece-meal, and if one part or clause has reference to another the two should be construed together. But the separate and distinct clauses providing for separate and distinct things can be considered together only in so far as the one throws light upon

the other, and we are required in the construction of contracts to give words their ordinary meaning.

4. ———: ———: ———: "UNTIL." The word "until" is a word of limitation used ordinarily to restrict what immediately follows it.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED.

### STATEMENT.

The suit was commenced on December 16, 1891, by plaintiff filing in the St. Louis Circuit Court the following petition (omitting caption):

"Plaintiff states that on August 18, 1866, George I. Barnett, trustee, Thomas O'Reilly, and defendant, Richard D. Lancaster entered into an agreement in writing, herewith filed, in words and figures as follows, to-wit:

"It is agreed between George I. Barnett, trustee of Elizabeth Barnett, Thos. O'Reilly and R. D. Lancaster, all of the city of St. Louis, State of Missouri, as follows:

"That whereas said Barnett, as trustee as aforesaid, said O'Reilly and said Lancaster own stock in the Insurance and Law Building Company in the following proportions, to-wit: said Barnett, trustee, holds two hundred shares, and said O'Reilly one hundred and fifty shares, and said Lancaster one hundred shares, the par value of said shares being one hundred dollars per share; and whereas the payments required upon the shares of said Barnett are to be made according to the terms of a certain agreement, dated the 26th day of May, 1866, between James E. Yeatman, trustee of Lucretia Yeatman, and George I. Barnett, trustee of Elizabeth Barnett, and Thomas O'Reilly, and the said O'Reilly and Lancaster are to pay on their shares whatever calls may be made thereon until the full amount of the par value of said shares be paid. And it is agreed between the said parties as follows: that out of the pro-

ceeds, rents and profits of the above described shares in said Insurance and Law Building Company held by said Barnett, trustee of Elizabeth Barnett, O'Reilly and Lancaster, after paying all expenses, ground rents, taxes, etc., including the interest to be paid to James E. Yeatman, trustee of Lucretia Yeatman, under the agreement hereinafter referred to, there shall be first refunded and paid to the said O'Reilly and Lancaster, pro rata, on the respective amounts of fifteen thousand advanced by O'Reilly and ten thousand advanced by Lancaster, until both these amounts shall be paid in full with interest at ten per cent per annum; and it is understood that the amount of profits paid to said O'Reilly and Lancaster will be computed at the end of every quarter, and the interest on the amounts paid each quarter to cease with the date of said payments. And when the said sum so paid up by said O'Reilly and Lancaster shall have been fully paid back, the said Barnett, as trustee of Elizabeth Barnett, shall transfer to said O'Reilly twenty-five shares of said stock so as to make equal the amount of stock owned by said Barnett, trustee, and said O'Reilly; after which any dividend declared upon said stock shall be received by said O'Reilly, Lancaster and Barnett, trustees, pro rata, in proportion to the amounts of stock held by them, as by their legal representatives, as aforesaid.

" 'In testimony whereof, the above parties have hereunto signed their names this 18th day of August, 1866. (Signed) George I. Barnett, Trustee of Elizabeth Barnett, Thomas O'Reilly, R. D. Lancaster.

"Plaintiff states that pursuant to said agreement in writing, the proceeds, rents and profits of the above described four hundred and fifty shares, after paying all expenses, ground rents, taxes, etc., including interest to be paid to James E. Yeatman, trustee; or, in other words, the dividends on said shares declared by said Insurance and Law Building Company, less the said interest to be paid the said Yeatman, were duly paid

and refunded to said O'Reilly and Lancaster, pro rata, until they were fully repaid their respective amounts, to-wit, $15,000 and $10,000 with which they had purchased their said shares in said company, and the ten per cent interest thereon, and this was accomplished in or about the year 1874.

"Plaintiff states that said Barnett duly transferred to said O'Reilly twenty-five shares of the two hundred shares, and that all said parties, including said Lancaster continued, after said O'Reilly and Lancaster had been thus fully paid up, to contribute, pro rata, out of the dividends declared upon their respective holdings of shares, to the payment of the interest to be paid to said James Yeatman, until about May, 1876, when defendant Lancaster failed and refused to pay the pro rata contribution of the said interest, which he had, as aforesaid, agreed to pay; that said Lancaster as owner of one hundred shares of said stock, was bound to contribute two-ninths of the $1,600 annual interest charge, payable to said Yeatman under the agreement of May 26, 1866, between James E. Yeatman, trustee, and George I. Barnett, trustee, and said Thomas O'Reilly, which said agreement is in words and figures as follows, to-wit:

" 'This agreement, made this 26th day of May, 1866, by and between James E. Yeatman, trustee of Lucretia Yeatman and others (appointed as such trustee by the circuit court of St. Louis county, Missouri, on the 5th day of March, 1866) of the one part, and George I. Barnett and Thomas O'Reilly of the other part, all of said St. Louis county, witnesseth: ·

" 'That the said Yeatman, as such trustee, to pay to the treasurer on the Insurance and Law Building Company, a corporation existing under the laws of the State of Missouri, in behalf and for account of George I. Barnett, trustee of his wife, Elizabeth Barnett, from time to time as and on the conditions below stated, out of the trust estate in his hands as such trustee, the sum

of twenty thousand dollars in all; said payments to be made in sums of not less than one thousand dollars at a time, and the sum or sums paid thereunder from time to time to be equal to, say, one-fourth of such amounts as shall at the time of calling for said payments respectively have been actually paid out by said company for work and labor already done and materials used in the erection of the four-story building which said company, as lessee, has by lease of even date herewith contracted with said Yeatman, trustee, to erect in one year from said date upon the lot in block 87, of the city of St. Louis, at the northwest corner of Third and Pine streets, provided that the work and labor so done and materials used shall correspond with the requirements of said lease in respect to said building; and that the receipt of the contractors or subcontractors and materialmen for the amounts so paid out by said company shall be first exhibited to said Yeatman, or his agent if required; and provided also that the said building while erecting shall be kept insured by said company as stipulated in said case.

" 'And the said George I. Barnett and Thomas O'Reilly agree to and with said Yeatman as such trustee, his successors in trust and assigns, that upon the amounts so paid by said Yeatman, trustee as aforesaid, they will pay or cause to be paid to him, said trustee, his successors in trust or assigns, interest at the rate of eight per cent per annum during the entire term of the lease above mentioned till its expiration by forfeiture or otherwise, said interest to be paid in equal installments, at the end of every three months at the annual rate aforesaid, and to be computed and payable on the several amounts payable hereunder by said Yeatman from the date of such payments respectively. And they further agree that before any money shall be payable hereunder by said Yeatman they will transfer or cause to be transferred to him, said Yeatman, trustee as aforesaid, or such person as he may designate as trus-

tee for him, all the shares of stock held by said O'Reilly and said Barnett as trustee for Elizabeth Barnett in said company, to-wit, one hundred and fifty shares held by said O'Reilly and two hundred shares held by said Barnett, trustee as aforesaid, such transfer to be made by way of mortgage or deed of trust in the usual form, securing the several payments of interest above agreed for, containing power of sale in case of failure to pay any installment of said interest, such transfer to be made or noted on the books and in accordance with the by-laws of the company.

" 'Provided, and it is hereby understood and agreed that upon condition of, and after the erection and completion of said buildings above mentioned in accordance with the stipulation in said lease in respect to the same, the said O'Reilly shall in no event be liable to said Yeatman, trustee, or assigns, under this agreement for any greater sum than fifteen thousand dollars in all.

" 'In witness whereof, said parties have hereunto set their hands and seals respectively the day and year above written. (Signed) James E. Yeatman, trustee for Mrs. Lucretia Yeatman; George I. Barnett, trustee for Elizabeth Barnett; Thos. O'Reilly, George I. Barnett.'

"That by reason of the failure and refusal of said Lancaster to continue so to contribute thereto, said Barnett and O'Reilly were compelled to and did pay to said Yeatman the contribution due from said Lancaster, to-wit, the sum of three hundred and fifty-five dollars and thirty-five one-hundredths per annum in quarterly installments, from about May, 1876, until May, 1887. That said payments were made by said Barnett and O'Reilly equally.

"Plaintiff states that said Barnett and O'Reilly have assigned to plaintiff their rights of action against said Lancaster under the said contract of August 18, 1866, to recover the said money and interest thereon

as damages for said Lancaster's breach of said contract, and plaintiff therefore asks judgment for six thousand dollars and for his costs.''

The answer was a general denial and a plea of the ten-year statute of limitations.

The case was referred to Arba N. Crane, Esq., to try all issues. After many delays, the referee heard the evidence and on October 21, 1901, made his report to the circuit court and found the issues for the plaintiff.

He found specially that Yeatman advanced the $20,-000 as he agreed to do in the contract of May 26, 1866, and was entitled to eight per cent interest thereon per annum during the life of the lease (twenty-one years) payable in quarterly installments of $400, and further found that the interest was paid by Barnett, O'Reilly and Lancaster, down to August 1, 1877, each contributing thereto in the proportion his holding of stock in the corporation bore to the whole amount of stock issued to them (450 shares); that after August 1, 1877, Lancaster contributed nothing to pay said interest but that it was paid by Barnett and O'Reilly until the termination of the lease; that by the agreements of May 26 and August 18, 1866, O'Reilly was to pay to the corporation the par value of the stock subscribed by him, $15,000; Lancaster the par value of the stock subscribed by him, $10,000, and Yeatman the par value of Barnett's stock, $20,000, as required for the erection of a building on the leased premises; that these several amounts were paid in by the respective parties; that O'Reilly and Lancaster were to have the amounts paid in by them returned with ten per cent interest per annum from the net profits and rents of the premises, i. e., after paying taxes, charges on the property, repairs, etc., and the interest to Yeatman, while the payment of the $20,000 by Yeatman was not to be returned. That the agreement between Barnett, O'Reilly and Lancaster, of August 18, 1866, was that the interest becoming due to Yeatman should be paid as expenses and should

come out of the gross rents and profits accruing from the 450 shares of stock held by them, and that this arrangement was carried out until Lancaster and O'Reilly had received the $25,000 with ten per cent interest per annum from the net profits, and that this was accomplished in the year 1874.

The referee in his report says that the real contest between the parties is as to the period when the duty of Lancaster, to contribute two-ninths of the interest to Yeatman, ceased; that the contention of plaintiff is that it continued to the termination of the lease, while Lancaster contends that it ended when he and O'Reilly had received from the net rents and profits the amount they had paid into the corporation with the agreed interest. The referee found that the obligation of Lancaster to pay two-ninths of the interest to Yeatman continued to the termination of the lease and awarded to plaintiff two-ninths of all the interest paid by Barnett and O'Reilly to Yeatman within ten years next before the beginning of the suit, with six per cent interest on each payment down to the date of the filing of the report.

A motion to set aside the report was filed by the defendant which the court overruled. The report of the referee was approved and judgment entered in conformity to his findings. After an unsuccessful motion for a new trial defendant appealed.

*Chester H. Krum* for appellant.

(1) The petition does not state a cause of action, there being no liability of appellant shown by the contract on which the petition is based. The evidence introduced before the referee was, therefore, improperly admitted, and there should have been a judgment for the appellant. (2) The referee erroneously admitted in evidence the opinion or letter of Judge Bakewell with reference to the scope and meaning of the contract sued

on.   (3)   The allowance of interest was erroneously made from the time when the payments were made by O'Reilly, under the contract with Yeatman, the interest allowable having properly run only from the date of the institution of the suit.   No demand was shown, and hence no basis was afforded for the allowance of interest from a date earlier than the beginning of the suit.

*James P. Maginn* and *A. M. Sullivan* for respondent.

(1)   The object of interpretation is always to reach the actual intention of the parties as expressed in their language.   Ellis v. Harrison, 104 Mo. 270; Johnson County v. Wood, 84 Mo. 489; Huse & Loomis Ice Co. v. Heinze, 102 Mo. 245; Union Depot Co. v. Railroad, 113 Mo. 213.   (2)   A contract must be construed in the light of the facts and circumstances surrounding its subject-matter, and under which it was made.   Crawford v. Elliott, 78 Mo. 497; Brannock v. Ellmore, 114 Mo. 55.   (3)   A rational and harmonious effect should, if possible, be given to all its parts.   Ellerbe v. Barney, 119 Mo. 632; Shickle v. Chouteau-Harrison & Valle Co., 10 Mo. App. 241; s. c., 84 Mo. 161; Johnson County v. Wood, 84 Mo. 489.   (4)   A contract is to be so construed, if possible, as to make it reasonable.   Redheffer v. Leathe, 15 Mo. App. 12.   (5) Where there is doubt as to the proper meaning of a contract, the construction which the parties by their acts under it have practically given it, is entitled to great weight.   Deutmann v. Kilpatrick, 46 Mo. App. 624; Moser v. Lower, 48 Mo. App. 85.

BLAND, P. J.—The execution of the two agreements set out in the petition was admitted.   It appears from the evidence that after O'Reilly and Lancaster had been paid the $25,000, which they had paid into the corporation, with ten per cent interest thereon, and after Barnett had transferred twenty-five shares of his stock to O'Reilly, as per agreement of August 18, 1866, he

voluntarily transferred sixteen shares of his stock to Lancaster for the reason, as Lancaster testified, that he (Lancaster) had collected and paid out for the corporation the whole $45,000 expense in the construction of the building without charge, and that Barnett transferred the stock to him as remuneration for these services. All of Barnett's two hundred shares of stock were pledged to Yeatman as collateral security for the interest on $20,000 he had loaned to Barnett, and Lancaster testified that he continued to pay interest to Yeatman to the end of the lease out of profits in the proportion the sixteen shares, transferred to him by Barnett, bore to the two hundred shares formerly held by Barnett, and that the sixteen shares were of no profit to him. In 1876 Lancaster transferred one hundred shares of his stock to Tiernan, the transfer, in fact, being made to one Keating for Tiernan's benefit. Lancaster was secretary and treasurer of the corporation; Tiernan being his bookkeeper carried the Yeatman interest on the books of the corporation as a joint charge against the dividends declared on the stock of O'Reilly, Barnett and Lancaster until August, 1877, when Lancaster refused to longer contribute to the payment of the interest.

Lancaster testified that he objected to and protested against the payment of any part of the interest to Yeatman after 1874, when he had been paid the par value of his stock with interest and when Barnett became entitled to receive dividends on his own shares of stock, and that he then claimed that his obligation to contribute to the payment of interest terminated in 1874, when Barnett became entitled to receive dividends on his own stock.

The right of plaintiff to recover, if any he has, must be found in the contract of August 18, 1866. The contract has no latent ambiguities and can not, therefore, be helped by the parol evidence in the case. In respect to the length of time the Yeatman interest should

be treated as a first charge against dividends on the four hundred and fifty shares of pooled stock, the contract is somewhat obscure.   This obscurity furnished the occasion for this lawsuit.

The contention of plaintiff is that under the contract, O'Reilly, Barnett and Lancaster pooled their stock for the life of the lease and agreed that the Yeatman interest should be paid out of the earnings of the pooled stock until all interest to become due was discharged.   The defendant contends that the pool ended at the point of time when he and O'Reilly were paid, out of the net earnings of the pooled stock, the par value of their stock with interest.   It is claimed by plaintiff that the parties themselves, by continuing the pool for three years after Barnett became entitled to dividends on his own stock, construed the contract as continuing the pool to the end of the lease.   In the light of the evidence of Lancaster, that he objected to and protested against contributing to the Yeatman interest after Barnett became entitled to dividends on his own stock, we do not think it can be safely said that he at any time construed the contract as contended for by plaintiff or agreed to that construction. The contract must therefore be construed by its terms. These being of doubtful meaning we must ascertain what was in the minds of the parties at the time the contract was entered into with reference to the subject-matter under consideration, and the purposes to be accomplished by the contract and from these ascertain the scope and meaning of the agreement as written.

The situation was, O'Reilly, Barnett and Lancaster had subscribed $45,000 to the corporation to be used in the erection of a building to be leased to tenants. Barnett had subscribed for two hundred shares of stock in the corporation and had borrowed $20,000 of Yeatman to pay for it, agreeing to pay eight per cent interest per annum on the loan for twenty years in discharge of the loan and had pledged to Yeatman his two hun-

dred shares of stock as collateral security for the payment of this interest and had given O'Reilly as personal security for $15,000 of the interest to accrue after the building was erected to secure which O'Reilly had pledged to Yeatman his one hundred and fifty shares of stock. At this time the stock was earning nothing and could not until the completion of the building on the leased premises. After the erection of the building it was expected that large profits would be made, but the amount of these profits was uncertain. It was not known at that time, and no doubt the parties were uncertain, whether or not the dividends from Barnett's two hundred shares would be sufficient to pay the Yeatman interest; if not, then his holdings of stock would be a positive burden instead of a profit to him. To provide against this contingency, Barnett proposed to forego all participation in dividends to be declared on his stock until the happening of an uncertain event, if O'Reilly and Lancaster would pool their stock with him and agree that the Yeatman interest should be a first charge on the dividends to be declared on the pooled stock; O'Reilly and Lancaster to receive the balance of such dividends until from such balance they should each receive the par value of his stock with ten per cent interest thereon, thereafter Barnett to receive the dividends on his own stock. This arrangement was satisfactory to all parties and was agreed to and incorporated in the contract. The contingency provided for in the agreement, upon the happening of which Barnett would be entitled to receive the dividends on his own stock, might never happen and Barnett never realize any profit on his shares of stock, but he would not be the loser, if the whole of the dividends on the pooled stock would have been sufficient to pay the Yeatman interest. On the other hand, it might have turned out that the dividends on Lancaster's one hundred shares of stock would have been greater, taking the whole life of the lease, had he not agreed to contribute to the pay-

ment of the Yeatman interest. This was the situation when the agreement was made and these possibilities and contingencies must have been in the minds of the parties at the time, and the contract must be construed with these in mind.

It will be seen by reading the contract that Lancaster did not make himself a party to the prior agreement between Yeatman, Barnett and O'Reilly, nor did he become unconditionally bound to Barnett and O'Reilly, or to Yeatman, to pay any part of the interest. He agreed to pool his stock with that of O'Reilly and Barnett and that the payment of the Yeatman interest should be a first charge on the earnings of the pooled stock.

When, if at all, during the life of the corporation did this agreement terminate, is the question in controversy. It seems to us that it was to run and be in force "until" the amounts paid by O'Reilly and Lancaster into the corporation with ten per cent interest thereon should be earned in net dividends on the four hundred and fifty shares of pooled stock and be paid to them. After the attainment of this result, Barnett was to transfer to O'Reilly twenty-five shares of his stock and the profits (dividends) were to be divided pro rata between the three of them in proportion to the amount of stock held by each. When this changed condition was brought about the shares held by O'Reilly and Lancaster had paid for themselves with ten per cent interest. The shares held by Barnett were still burdened with the payment of the Yeatman interest hypothecated as security therefor.

It is contended by respondent that the last clause of the contract, to-wit: "And when the said sums so paid up by said O'Reilly and Lancaster shall have been fully paid back, the said Barnett, as trustee of Elizabeth Barnett, shall transfer to said O'Reilly twenty-five shares of said stock, so as to make equal the amount of stock owned by said Barnett, trustee, and said O'Reilly, after which any dividend declared upon said stock shall

be received by said O'Reilly, Lancaster and Barnett, trustee, pro rata, in proportion to the amount of stock held by them, as by their legal representatives, as aforesaid,'' would be meaningless if the pool of the shares of stock is made to end at the point of time when O'Reilly and Lancaster had received from dividends of the four hundred and fifty shares of pooled stock the amounts they severally had paid into the corporation with ten per cent interest thereon; that the purpose of this paragraph was to continue the aggregation of these shares and the dividends thereon charged with the payment of the Yeatman interest to the termination of the lease. It seems to us this clause was introduced in the contract for an entirely different purpose. It is not connected with the preceding clause and its purpose, it seems to us, is to provide that after the pool arrangement had accomplished the purposes of the pool, a new arrangement, as between O'Reilly and Barnett, in respect to their shares of stock should be made, to-wit, that all the pledged stock, Barnett's two hundred shares and O'Reilly's one hundred and fifty shares should be equally divided between the two, by Barnett transferring twenty-five of his shares to O'Reilly and that thenceforth they, O'Reilly and Barnett, should share equally in the earnings of this stock, if such earnings should exceed the amount required to discharge interest to become due to Yeatman. Lancaster's shares were not pledged and hence he was not brought into this new arrangement for the partition of the stock.

The stipulation that after the transfer of twenty-five shares of stock to O'Reilly, the dividends declared should be received by O'Reilly, Barnett and Lancaster pro rata in proportion to the amount of stock held by them without mentioning the Yeatman interest, seems to us to exclude the idea that the pool of four hundred and fifty shares should longer continue and that this was written into the contract to show that Bar-

nett should participate in the dividends and the proportion he should be entitled to. There is certainly nothing in the paragraph to indicate that dividends on Lancaster's stock should contribute to the payment of the Yeatman interest, or that his stock should be any longer pooled with that of O'Reilly's and Lancaster's, unless the word "until" used in the preceding paragraph of the contract carries forward the pooling clause therein to the last paragraph. Respondent contends that this word has this effect, and that its proper office is to connect these two separate and distinct clauses together.

The contract should be construed as a whole and not by piecemeal, and if one part or clause has reference to another the two should be construed together. But the separate and distinct clauses providing for separate and distinct things can be considered together, only in so far as the one throws light upon the other, and we are required in the construction of contracts to give words their ordinary meaning, when they have one. The word "until" is a word of limitation used ordinarily to restrict what immediately precedes it to what immediately follows it. Its office is to point out some point of time or the happening of some event when what precedes it shall cease to exist or have any further force or effect. In the connection in which it is used in the contract it can have no other meaning than that the pool contract should continue up to the time when O'Reilly and Lancaster received from the dividends on the pooled stock the amounts respectively paid into the corporation by them with ten per cent interest thereon. It appoints a time when the pool contract shall end.

"In open prospect nothing bounds our eye,
Until the earth seems joined unto the sky."

The argument, that the word "until" joins the last to the preceding paragraph of the contract, seems to us as delusive as is the optical illusion that the earth joins the sky at the extreme point of unobstructed vision. The last clause does not serve to explain the first

any further than to show when the agréement contained
in it should terminate.

Another obstacle in the way of plaintiff's construc-
tion of the contract is, that the interest due to Yeatman
was Barnett's debt, not Lancaster's. Why should Lan-
caster continue to contribute to the payment of Barnett's
debt after the inducement to do so had been withdrawn
by Barnett's stepping in and participating in the div-
idends or profits? For it must be kept in mind that
the only consideration that could have moved Lancas-
ter to enter into the agreement of August 18, 1866, was
that Barnett agreed to forego participation in the div-
idends on the four hundred and fifty shares of pooled
stock on condition that O'Reilly and Lancaster would
agree to treat the Yeatman interest as a first charge on
said dividends. It seems to us that when the consid-
eration for the contract failed, that Lancaster's obliga-
tion under the contract ceased.

After providing that the $400 of interest becoming
due quarterly on the Yeatman note should be included
as an expense of the corporation, the contract provides
as follows: "There shall be first refunded and paid to
the said O'Reilly and Lancaster, pro rata on the re-
spective amounts of $15,000 advanced by O'Reilly, and
$10,000 advanced by Lancaster, until both these amounts
shall be paid in full with interest at the rate of ten per
cent per annum." The right of O'Reilly and Lancas-
ter to receive all the dividends after paying expenses,
including interest to Yeatman, is made to depend upon
the application of dividends to the payment of interest
on Barnett's note to Yeatman. These are interdepend-
ent stipulations, both of which were to run together and
continue *until* O'Reilly and Lancaster should receive
the respective amounts paid into the corporation by
them with interest. The preposition "until" is a re-
strictive word, a word of limitation (State ex rel. v.
Perkins, 139 Mo. l. c. 115), and means in this contract
that the payment of the Yeatman interest out of the

profits of the corporation shall be limited to the point of time when O'Reilly and Lancaster should receive from the profits the amounts respectively paid in by them with the stipulated interest. These were the purposes of the bargain and it should be restrained to these purposes. Blair v. The Chicago & Alton R. R. Co., 89 Mo. l. c. 393.

The purposes of the bargain between Barnett, O'Reilly and Lancaster, so far as Lancaster was interested or concerned, were accomplished when he received his $10,000 with the agreed interest, when Barnett became entitled to and did receive the dividends on his own stock.

The construction of the contract contended for by the respondent was given it by Judge BAKEWELL, a former judge of this court, by the referee and by the judge of the circuit court. It was ably presented on the first hearing by the respondent's counsel and we gave the case careful consideration before preparing our first opinion and hesitated long before committing ourselves to the result then reached for the reason the views we entertained were opposed to the views of the three learned jurists above mentioned. When the motion for rehearing was filed we readily sustained it and granted a rehearing, not because we had changed our views, but for fear we might be in error. The case has been again very ably argued by counsel for both parties. With these arguments fresh in our minds we have again gone over the case and given it the best consideration we are capable of, with the single object of arriving at a correct interpretation of the contract. After doing so we find it impossible to change our views as expressed in our former opinion and therefore reverse the judgment. All concur.