STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH TIMMERARI, PLAINTIFF IN ERROR.

Argued June 21, 1921—Decided November 14, 1921.

1. If in his charge to the jury the judge uses a word or a phrase the very opposite of which he intends, and his true intent and meaning are to be gleaned from the other parts of the charge, and if upon the whole charge the jury cannot reasonably be thought to have been misled, there is no error.
2. In an assignment of error the ground must be specifically set forth, as the adversary party is entitled to know what the exception is upon which the plaintiff in error relies.
3. There is no such thing in law as "dividing culpability" or "distributing guilt;" nor is there anything erroneous in the charge of a judge that may merely tend to preclude an acquittal unless judicial error supervenes.

On error to the Middlesex County Court of Oyer and Terminer.

For the plaintiff in error, *Walter C. Sedam* and *J. Victor D'Aloia.*

For the defendant in error, *Joseph E. Stricker,* prosecutor, and *John E. Toolan,* assistant prosecutor of the pleas.

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff in error was convicted in the Middlesex Oyer and Terminer of murder in the first degree, and brings error into this court on a strict bill of exceptions. He was indicted jointly with his father and mother for the murder of Henry Kouphaupt. All three pleaded not guilty, were tried jointly, and the jury convicted Joseph, the son, of murder in the first degree, and acquitted Espara, the father, and Angelina, the mother.

In order to better understand the only exception argued some recital of the facts is necessary. They are succinctly stated in the charge of the trial judge as follows: "The state

claims, as I recall this evidence, to have proved that the deceased went into the road in front of his house, or at the side of his house, and had some controversy with this young man [plaintiff in error] and his father [one of the defendants]. That in that controversy the young man shot the deceased and inflicted a wound in his leg; that thereupon the deceased went into his house and had his leg bandaged, and then prepared his auto, for the purpose of making a complaint against the son, one of these defendants, for inflicting this wound; that when he reached the sidewalk at the side of his house, when his auto was about a foot outside of his gate, that this young man, Joseph—that is, the son, stopped him there and told him not to go any further, and then shot at the deceased, struck the wind-shield of his auto and broke it; that thereupon the deceased got out of his machine to go into his house, and that these three defendants made an assault on him. In other words, that the father grabbed the deceased and held him, or undertook to hold him, that the mother assaulted him with this iron bar, and that the son shot him, the first shot, apparently, under this evidence, taking effect in his head, and that he fell, from the effects of that wound, and thereupon the young man placed the revolver at his breast, or side, when he was down, and fired again. Doctor Suydam has testified that either of these wounds—that is, the wound in the head, or the wound through the breast, was necessarily fatal, and either would have caused the death of the deceased, which ensued thereafter. If this is true, then you would be justified in finding, I think, from this evidence, that this young man shot and killed this deceased, and that while that was being done, he was being assaulted by the father and the mother, and, as I have already said to you, that if these three people were there aiding and abetting each other to commit this assault, the consequence of which might be either serious bodily injury, or result in bloodshed, then they would all be equally guilty, it would not make any difference who fired the shot. That is the law of the land, and the law by which you are to be governed in the application of the facts as you find them."

After the jury retired they returned into court where the following took place: "The Court—Gentlemen, you have sent me a communication which reads as follows: 'Can we bring in a verdict for some of the defendants for manslaughter?' I thought I charged you pretty fully on that question. In answer to this question, however, I would say that unless there was a concert of action agreed upon between these defendants to commit this assault, and which resulted in the death, through the act of one of the parties, they are either guilty of an equal degree or they are not guilty. Is there any other question you want to ask me? You may retire. I do not mean that; I do not want to be understood by that, that because you acquit some you have to acquit all. You might find one guilty of murder, either first or second degree, or of manslaughter, but all would have to be, if they are guilty at all, of equal degree. I do not mean they should all be acquitted. I do not understand that to be your question. You may retire."

The record discloses three assignments of error and specifies three identical causes for reversal. The latter are useless to the plaintiff in error because the entire record of the proceedings had upon the trial was not brought up under section 136 of the Criminal Procedure act, at least, we do not know it, as there is no certificate that it is, and such is required when that act is invoked. See State y. Clark, 75 N. J. L. 473. There is only the usual return endorsed on this record. See State v. Fisher, 95 Id. 419. The defendant, however, is not harmed by the entire record of the proceedings had upon the trial not being before us for consideration, as he excepted to the supplemental charge, and that objection—the only one argued—is available to him on his strict bill of exceptions without the aid of the corresponding specification of cause for reversal under section 137 of the Criminal Procedure act. The exception is, that because the court, in answer to the jury's question, "Can we bring in a verdict for some of the defendants for manslaughter," charged and instructed the jury as last above set forth.

Although it is involved in the exception but is not pointed out in an assignment of error, and no point was made of it in the argument, we desire to state that the trial judge in his supplemental charge unfortunately used a word which, if applied in strictness, would have tended to mislead the jury. He remarked: "I would say that *unless* there was a concert of action agreed upon between these defendants to commit this assault which resulted in the death, through the act of one of the parties, they are either guilty of an equal degree or they are not guilty." The word "unless" is a conjunction and means, *inter alia,* "if it be not." *Webs. Int. Dict.* 2245. Now, the strict meaning of the sentence would be that if there *were not* a concert of action agreed upon by the defendants *they* would either be guilty of an equal degree or *not* guilty. Obviously, all three could not be held responsible for the acts of one, and be equally guilty with him, where he alone slew the deceased, as in this case—that is, not unless there *were* preconcert among them. What the trial judge undoubtedly meant, and intended to say, was: If there *were* a concert of action agreed upon among them, &c., they would either be guilty of an equal degree or not guilty; and counsel and jury must have so understood it. And the jury by their verdict found that there was no preconcert or they would have convicted all as instructed in the charge.

In *Redhing* v. *Central Railroad Co.,* 68 *N. J. L.* 641, where the trial judge in one clause of his charge instructed the jury that plaintiff's right depended upon his "honest belief" instead of his "reasonable belief," a totally different thing, this court held that on the entire charge the jury must have understood the judge correctly. And so it is here, for in the main charge the judge told the jury that if the defendants were there aiding and abetting each other then they would all be equally guilty and it would not make any difference who fired the shot; and, again, that if the jury found that there was no agreement or combination, but that they were acting independently of one another, then they must determine each defendant's guilt or innocence, as they found the truth to be.

For the convict it is argued that a person cannot be guilty of murder as an aider and abetter where he acted upon a sudden impulse and was wholly ignorant of malicious motives or felonious intent on the part of the actual slayer, that his acts must have been done with the intention of aiding, abetting and encouraging the homicide; and this proposition is restated several times in varying terms of expression. The doctrine thus invoked was not made the subject of any request to charge nor does it reside in any exception unless it can be spelled out of the only one argued, which is, adopting the words of the pleader, *because the court charged and instructed the jury as above set out* in the supplemental charge (giving the exact words thereof, without more). This, like the assignment in *State* v. *MacQueen,* 69 *N. J. L.* 476, is too vague and indefinite. It does not point out wherein the supplemental charge is erroneous in any particular. Progressing beyond the mere exception, we find that in an assignment of error the ground must be specifically set forth, as the adversary party is entitled to know what the objection is upon which the plaintiff in error relies, and it is not the function of the court to search for errors not distinctly pointed out. *State* v. *Hendrickson,* 95 *Id.* 10. However, like the Supreme Court in State *v.* MacQueen, we have examined the charge, both main and supplemental, and find no error in it. Besides, the argument, so far as it suggests that the plaintiff in error cannot be guilty as an aider and abetter if ignorant of the intent of the actual slayer, is pointless, as he himself was the actual slayer. If his father or mother, or either of them, had been convicted along with him, the argument could be made on their behalf with show of reason, but not for him on the facts disclosed by the record.

The brief for plaintiff in error concludes with the assertion that the learned trial judge erred, because the (supplemental) charge tended to preclude the jury from considering a distribution of guilt among the accused by not permitting them (the jury) to divide the culpability into different grades and degrees, and that it tended to preclude the acquittal of the plaintiff in error.

There is of course no such thing in law as "dividing culpability" or "distributing guilt." Nor is there anything erroneous in the charge of a judge that may merely tend to preclude an acquittal, unless judicial error supervenes, and none is present here.

The judgment under review must be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK, JJ. 14.

*For reversal*—None.