GRIFFITH ET AL., APPELLANTS, *v.* CEDAR CREEK OIL & GAS CO., RESPONDENT.

(No. 6,898.)

(Submitted February 10, 1932. Decided March 7, 1932.)

[8 Pac. (2d) 1071.]

*Mr. D. R. Young,* for Appellants, submitted a brief and argued the cause orally.

*Mr. C. J. Dousman* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

In May, 1927, the plaintiffs, John Griffith and wife, leased to the defendant, Cedar Creek Oil & Gas Company, a tract of land in Fallon county for exploration and operation for oil and gas, for a term of five years and as long thereafter as oil and gas is produced.

The instrument recites that the lessors "grant, demise, lease and let" the land described to the lessee, and that "in consideration of the premises the said lessee covenants and agrees: 1st. To deliver to the credit of the lessor * * * one eighth part of all oil produced and saved. * * * 2nd. To pay the lessor * * * $300 * * * for gas from each well, and lessor to have gas free * * * for all stoves and all inside lights in the principal dwelling-house on said land. * * * " It then declares that, "unless drilling operations be commenced * * * before the 15th day of July, 1927, this lease shall terminate as to both parties," and "that unless the lessee shall drill eight gas wells upon the land * * * or make payments therefor as hereinafter provided, this lease shall thereafter be null and void; that such rentals shall be computed on the basis of three wells or $900 per annum for the year commencing on the 15th day of September, 1927, payable quarterly in advance, each payment in the sum of $225; and on the basis of six wells * * * $1,800" for the second year, and thereafter on the basis of eight wells or $2,400 per year.

The lessee commenced drilling operations within time and completed a gas well before September 15, 1927, at which time the first rental installment of $225 would be due. No rent was ever paid. Before the first installment fell due, officers of the defendant company intimated that it would not be able to make payment on time, and requested, and were promised, leniency; after September 15 the defendant continued to exercise dominion over the land, with the consent of the plaintiffs. In November the president of the company admitted that "we owe you a considerable sum of money," and, in March, 1928, wrote plaintiffs asking them to still "persevere" and "be reasonable," and promising that he would soon see the plaintiffs, "regarding the lease and settlement of delayed payments on the well as per contract."

As late as January 20, 1930, the president of defendant company swore to an affidavit, filed as of December 31, 1929, with the Securities Commission of Minnesota in connection

with the sale of stock in that state, in which the well on plaintiffs' land was listed as an asset of the defendant company valued at $5,186.15. This the president explained as "because of the casing the company holds on the property."

The land was used for storage purposes; some surplus casing was left at the well and remained there at the time of the trial. Defendant never received any gas from the well, and the only use to which it was put was for lighting and heating purposes by plaintiffs. Although the lease only permitted them to use gas in "the principal dwelling house on said land," they piped gas into and used it in their barn and chicken-coop as well as in the house.

In 1930, the plaintiffs exercised dominion over the well by having it cleaned out for their own benefit, as it was not then producing gas sufficient for their use; it was not bettered to any appreciable extent by the work done upon it.

On April 8, 1928, no rental having been paid, and no subsequent well drilled, plaintiffs brought action for the installments due during the year preceding, and in August filed an amended complaint. Defendant demurred to the amended complaint, and, on the overruling of the demurrer, answered denying liability on the ground that the instrument sued upon was the "unless" type of lease and contained no promise, and imposed no obligation, to pay rent and that there had been no modification of the lease, either orally or in writing. The answer closes with an allegation, as a part of the answer and not by way of cross-complaint, that defendant had the right under the lease to draw and remove the casing from the well; that it had demanded the right to do so and plaintiffs refused to permit the drawing of the casing, claiming to be the owners thereof, and "that such action on the part of the defendant constitutes a sale of said casing to said plaintiffs by the defendant and that the reasonable value" of the casing is $2,000.

Plaintiffs denied the affirmative allegations of the answer and thereafter defendant moved the court for judgment on the pleadings, which motion was overruled.

In June, 1929, over objection of defendant, the court permitted plaintiffs to file a supplemental complaint for the recovery of rental alleged to have become due after the institution of the action. Defendant filed motion to require plaintiffs to make the supplemental complaint more definite and certain, but the motion was never passed upon by the court.

The cause was tried to the court sitting without a jury, and, at the close of the trial, each side submitted proposed findings of fact and conclusions of law. The court rejected both sets and made its own findings to the effect that the defendant had exercised no dominion or control over the premises since the fall of 1927, and had made no claim of interest in the land by virtue of the lease since March 24, 1928, but that, on the last-mentioned date, the defendant acknowledged indebtedness to the plaintiffs of delay rentals in accordance with the lease, and that at that time three quarterly installments of $225 each were past due. The court concluded as a matter of law that the plaintiffs were entitled to judgment in the sum of $675, with interest from April 2, 1928; that the lease became void after March, 1928, by reason of defendant's failure to pay rent, and the defendant was not liable for rent accruing subsequent to March 31, 1928. Judgment was entered in accordance with the conclusions of law.

Plaintiffs have appealed from the judgment, contending that they are entitled to the full amount of rental for which provision is made in the lease, on the theory that therein defendant covenants to pay rent for the term of the lease; and, by cross-assignments of error, the defendant has challenged the correctness of the court's action in overruling its demurrer to the complaint; in permitting the plaintiffs to file their supplemental complaint, in refusing to pass upon its motion to make more definite and certain, and in overruling its motion for judgment on the pleadings. The cross-assignments also challenge the correctness of the court's findings of fact and conclusions of law and the judgment.

Counsel for plaintiffs asserts that the only question presented is as to the construction of the lease, and contends that

it is what is denominated an "or" lease containing the covenant to pay rent and, therefore, the court should have rendered judgment in favor of the plaintiffs for all rentals due up to the time of trial, or $5,900, with accrued interest. With this contention we cannot agree.

It is true that the lease does contain a covenant to pay $300 "for the gas from each well," and that, on compliance with the first "unless" clause quoted above, if the lease contained no further provision on the subject, the relation of landlord and tenant would have been established and the lessee required to pay the stipulated rental if, under the peculiar wording of the lease, the well was such a one as required the payment of rental. (*Glasgow* v. *Chartiers Oil Co.*, 152 Pa. 48, 25 Atl. 232.)

It will be noted that there is nothing to indicate what period would be covered by the payment, if made, and that the $300 is not to be paid as ground rental for the well, but "for the gas from" the well. Certainly, it was not the intention of the parties that the lessee pay $300 per day, month or year "for gas" if a well drilled produced no gas, and the situation should be the same if, as here, it produced so small a flow of gas that it was hardly sufficient to furnish the lessors with their "free" gas.

It is generally held that a provision in a lease for gas rental requires no payment to be made if no gas is received by the lessee. (*Ohio Oil Co.* v. *Lane*, 59 Ohio St. 307, 52 N. E. 791; *Williams* v. *Guffy*, 178 Pa. 342, 35 Atl. 875; *Indianapolis Gas Co.* v. *Teters*, 15 Ind. App. 475, 44 N. E. 549.) However, we need not consider this provision further, as this is not the "rental" which plaintiffs seek to recover by this action.

The second "unless" clause, quoted above, forms the basis of this action. Thereunder the lease becomes null and void, "unless," beginning with September 15, 1927, the lessee pays the stipulated quarterly installments on three, six and then eight wells, in advance each quarter. Therein is found no promise to pay rent; the lessee is merely accorded the option to drill or pay, and, if he does neither, the lease *ipso facto*

terminates. (*McDaniel* v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582; *Bowes* v. *Republic Oil Co.*, 78 Mont. 134, 252 Pac. 800; *Abell* v. *Bishop*, 86 Mont. 478, 284 Pac. 525.)

Under the terms of the contract the lease would have expired on September 15, 1927, on the failure of the defendant to make the payment required by the contract. However, before a default was suffered, at the solicitation of the defendant, the plaintiffs agreed to extend the time of payment for an indefinite period. This oral agreement was "executed" in that defendant remained in possession and exercised dominion and control over the property after the date on which, under the written lease, its rights would have *ipso facto* terminated, and this with the consent of the plaintiffs. Consequently the written contract was modified by an executed oral agreement. (Sec. 7569, Rev. Codes 1921; *Webber* v. *Killorn*, 66 Mont. 130, 212 Pac. 852.)

Three installment periods having passed without payment made, the defendant acknowledged its indebtedness in writing and renewed its promise to pay the past due rentals within a short time. As no definite time for payment, under the modification of the contract, was specified, defendant had a reasonable time within which to make the payments. (Sec. 7548, Rev. Codes 1921; *Evankovich* v. *Howard-Pierce Co.*, ante, p. 344, 8 Pac. (2d) 653.) On April 2, 1928, the plaintiffs terminated the period of their indulgence and definitely ended the reasonable extension of time by commencing action for the recovery of the rentals then past due and unpaid.

It follows that, when the defendant failed to pay the installment due on June 15, 1928, under the terms of the contract, the lease *ipso facto* terminated. This was the only effect of such nonpayment, and then and thereafter defendant was not liable for the amount of such installment or those which would have been due under the lease had it remained in force. The fact that the defendant represented to the Minnesota Securities Commission in 1929 that either the well or casing at the well constituted an asset of the company does not alter the situation; no act or declaration of the defendant

could revive a dead lease, nor could its assumption of ownership of the well continue the lease in effect.

The findings of fact, conclusions of law and judgment are, therefore, in accord with the law and the facts.

As to the cross-assignments of error: The amended complaint, filed August 14, 1928, alleges the contract of lease and sufficiently alleges the modification thereof, shows the amount due under the contract, and defendant's failure to pay, and is sufficient. Defendant was not entitled to judgment on the pleadings, and, as plaintiffs did not, and could not, recover under the allegations of the supplemental complaint, it is immaterial whether or not error was committed with reference thereto.

The remaining cross-assignments of error are disposed of by what is heretofore said. No proof was adduced regarding defendant's allegation to the effect that, by reason of refusal to permit it to draw the casing from the well, plaintiffs purchased the casing and were indebted to defendant in the sum of $2,000, and that item as a set-off, counterclaim, or if pleaded by way of cross-complaint, was clearly abandoned.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.