**In re WIEGAND.**

**No. 33256–Y.**

District Court, S. D. California, Central Division.

June 1, 1939.

Lawrence Paul Scherb, of Culver City, Cal., for petitioner.

Earl E. Moss, of Los Angeles, Cal., for trustee.

Hugo A. Steinmeyer and Edmund Nelson, both of Los Angeles, Cal., for Bank of America, amicus curiæ.

YANKWICH, District Judge.

An adjudication was made, upon a voluntary petition, on December 12, 1938.

The first meeting of creditors was held on January 3, 1939, at which time the trustee was elected.

The only assets listed in the bankrupt's schedules, other than his wearing apparel, for which he claimed exemption, is a De Soto automobile, turned over to the trustee.

On January 17, 1939, the trustee filed a petition before the Referee, claiming ownership of the automobile and seeking an order to show cause directed to one Winnie H. Lenn, a lien claimant by virtue of a chattel mortgage on the automobile. The trustee challenged the validity of the lien.

After a hearing before the Referee, he ruled that the automobile belonged to the trustee free of the claimed lien.

The evidence presented at the hearing before the Referee, as summed up by him in his decision, was:

A receipt in favor of the bankrupt, dated June 3, 1936, and signed by the Radcliff Motor Company of Kansas City, Mo., for the sum of $610.05, which "appears to be a receipt for the purchase price of the De Soto automobile."

A promissory note signed by the bankrupt in favor of Winnie H. Lenn for the same amount of money, to-wit: $610.05, dated at Kansas City, Mo., on June 3, 1936, payable twenty-four months after date. This convinced the Referee that Winnie H. Lenn "had loaned the bankrupt the money which he paid for the purchase price of the automobile."

The bankrupt's schedules show that on the 16th day of May, 1938, and eight days before the execution of the mortgage on the automobile to Winnie H. Lenn, a judgment was rendered against the bankrupt herein in a sum in excess of $200.

There was offered in evidence a chattel mortgage, dated May 24, 1938, and executed by the bankrupt in favor of Winnie H. Lenn, upon the De Soto automobile in question, to secure the payment of a promissory note in the sum of $681.95, payable

thirty months after date. It does not appear from the evidence that Winnie H. Lenn had had any previous security upon the obligation which the bankrupt owed her, although the bankrupt had owned the car in question since the date when Miss Lenn had first loaned him the $610.05.

The bankrupt and Miss Lenn were very close friends and had been "keeping company" for some time.

The original chattel mortgage was mailed to the Department of Motor Vehicles at Sacramento, California, for recording shortly after its execution. The Department of Motor Vehicles, on June 8, 1938, returned it to the mortgagee, with instructions to mail a copy of the mortgage with a notary's certificate attached, certifying to the fact that the copy was true and correct, with a request also for a fee of $1, for filing.

On June 28, 1938, the Department addressed a communication to the mortgagee, in reply to a communication from her under date of June 24, 1938, calling her attention to their letter of June 8, 1938. On July 7th, the Department finally received a certified copy of the original mortgage and recorded it.

While the Referee found that the mortgagee paid value for the chattel mortgage, he held that the delay in recording it invalidated it against the trustee.

At the start, we are faced with the question whether the recording of a chattel mortgage on a motor vehicle is governed by Section 2957 of the California Civil Code or by Sections 195 and 196 of the Vehicle Code, as amended in 1935 (St. 1935, p. 118). Section 2957 of the California Civil Code has been a part of the law of California since the enactment of that Code in 1872. In substance, it declares all mortgages on personal property "void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value unless" it is acknowledged, proved and certified as a grant of real property and is recorded in the office of the Recorder of the County where the mortgagor resides.

Sections 195 and 196 of the Vehicle Code, originally adopted in 1931, read:

"195. Application for Chattel Mortgage. No chattel mortgage on any vehicle registered hereunder irrespective of whether such registration was effected prior or subsequent to the execution of such mortgage, is valid as against creditors or subsequent purchasers or encumbrancers *until* the mortgagee or his successor or assignee has deposited with the department, at its office in Sacramento, a copy of said mortgage with an attached certificate of a notary public stating that the same is a true and correct copy of the original, accompanied by a properly endorsed certificate of ownership to the vehicle described in said mortgage if said vehicle is then registered hereunder, or if said vehicle is not so registered, by an application in usual form for an original registration, together with an application for registration as legal owner, and upon payment of the fees as provided in this code. * * *

"196. Registration Effective to Give Notice. When the chattel mortgagee, his successor or assignee, has deposited with the department a copy of the chattel mortgage as provided in section 195 hereof, such deposit constitutes constructive notice of said mortgage and its contents to creditors and subsequent purchasers and encumbrancers but such mortgaged vehicle shall be subject to a lien as provided in Division VIII hereof."

Previous enactments of this character (Sec. 45¼, California Vehicle Act, Stats. 1929, pp. 508, 517) calling for registration of chattel mortgages on motor vehicles with the Motor Vehicle Department of California have been interpreted by California courts as merely an added requirement to the provisions of Section 2957 of the Civil Code. Washington Lumber & Millwork Co. v. McGuire, 1931, 213 Cal. 13, 1 P.2d 437. This because the courts could see no conflict between the requirements of the two statutes.

However, the Legislature of 1931 (page 2517), in amending Section 45¼ of the California Vehicle Act, specifically exempted, both in the title and in the body of the Amending Act, chattel mortgages on motor vehicles from the provisions of Sections 2959 and 2965 of the Civil Code and "those provisions of section 2957 of the Civil Code which relate to the recording of mortgages on personal property."

But even these provisions were not considered repugnant, but merely complementary to the requirements of the Civil Code. Bush v. Bank of America National Trust & Savings Ass'n, 1934, 1 Cal.App.2d 588, 37 P.2d 168. Evidently, to overcome

the effect of these decisions and to do away with the anomaly which required of the mortgagee under a chattel mortgage of a motor vehicle both a recording and a registration, the Legislature of 1935 enacted what is now Section 198 of the Vehicle Code (St.1935, p. 119), which reads:

"198. Exclusive Method of Giving Notice. The method provided in this chapter for giving constructive notice of a chattel mortgage on a vehicle registered hereunder *is exclusive* and *any such chattel mortgage is excepted from the provisions of sections 2959, 2965 and 2966 of the Civil Code and those provisions of section 2957 of said code which relate to the recording of mortgages on personal property.*" (Italics added)

The only California case which seems to have arisen since this amendment became law is Chelhar v. Acme Garage, 1936, 18 Cal.App.Supp.2d 775, 61 P.2d 1232. Therein the Court, in speaking of the effect of this section, says: "But under section 45¼ of the Vehicle Act of 1923, as amended, the provision of section 2957, C. C., in relation to recording *did not* apply to mortgages of motor vehicles." Chelhar v. Acme Garage, supra, page 1233. (Italics added)

■ The Appellate Department of the Superior Court of California is a court of last resort. Its determination of matters, on appeals coming to it from the various Municipal and Justice Courts, is final. No appeal lies to either the District Courts of Appeals or to the Supreme Court of California. California Stats. 1929, p. 837; Berg v. Traeger, 1930, 210 Cal. 323, 292 P. 495; D-Q Service Corporation v. Securities Loan & Discount Co., 1930, 210 Cal. 327, 292 P. 497; Herbold v. Atchison T. & S. F. R. Co., 1931, 117 Cal.App. 430, 4 P.2d 184.

■ In fact, the Appellate Department is known at the Bar as "the little Supreme Court", as to matters within its jurisdiction. Unless its decisions, therefore, should conflict with those of the District Courts of Appeal or the Supreme Court of California, they are binding on all.

The opinion of the Appellate Department of the Superior Court in the case just cited, involving the interpretation of a state statute, would have been binding on us, even before Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

■ I fail to see how it can be disregarded. More, it should not be disregarded, because it gives effect to what is the plain language of the statute.

The previous decisions, arising *before the method of registration with the Motor Vehicle Department was declared exclusive,* were grounded on the proposition that, there being no conflict between the requirements, an intention to except chattel mortgages on motor vehicles from the general code provisions relating to the recording of all chattel mortgages will not be inferred.

But when the Legislature, by unequivocal language, says that it intends to except chattel mortgages on vehicles from the general recording requirements of other chattel mortgages and *to provide for a different and exclusive method* for their registration, it would be almost presumptuous on the part of courts to decline to give effect to such clearly expressed intent.

So doing, the question remains whether the delay in registering rendered the chattel mortgage invalid.

■ Courts of California have held that the non-compliance with Section 2957 of the California Civil Code, either by failure to record or long delay in recording, renders the mortgage invalid as against lien creditors. See Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, 76 A. L.R. 1198; In re Hansen, D.C., 1919, 268 F. 904; Swift v. Higgins, 9 Cir., 1934, 72 F.2d 791; Wolpert v. Gripton, 1931, 213 Cal. 474, 2 P.2d 767; Lemon v. Wolff, 1898, 121 Cal. 272, 53 P. 801; Loosemore v. Baker, 1917, 175 Cal. 420, 166 P. 26. The trustee in bankruptcy is such lien creditor, as of the date of the filing of the petition. Noyes v. Bank of Italy, 1929, 206 Cal. 266, 274 P. 68; Bailey v. Baker Ice Machine Co., 1915, 239 U.S. 268, 275, 276, 36 S.Ct. 50, 60 L.Ed. 275. But the wording of Section 195 of the Vehicle Code is different from the wording of Section 2957 of the Civil Code.

The latter declares certain mortgages void *"unless"* they comply with certain conditions. The former declares mortgages on motor vehicles not valid *"until"* certain conditions are fulfilled.

■ While, in insurance contracts and other like instruments (White v. Home Mutual Ins. Co., 1900, 128 Cal. 131, 60 P. 666), the words are sometimes made synonymous by the context, their meaning is.

quite distinct when found in instruments relating to title or in legislative enactments.

The word *"unless"* means "except, if not; upon any less condition (than that) or in any other case (than that)". "Unless" implies a condition, the non-happening of which prevents a right from arising. Griffith v. Cedar Creek Oil & Gas Co., 1932, 91 Mont. 553, 8 P.2d 1071; Graham v. Wichita Terminal Elevator Co., 1924, 115 Kan. 143, 222 P. 89; State v. Timmerari, 1921, 96 N.J.L. 442, 115 A. 394; In re Smith's Estate, 1901, 131 Cal. 433, 63 P. 729, 82 Am.St.Rep. 358; People v. Millsap, 1927, 85 Cal.App. 732, 260 P. 378, 383.

*"Until"* means "during the whole time before; up to the time of, (an action, occurrence, etc.), implying cessation or reversal at that time."

As said in State ex rel. Rowe v. Kehoe, 1914, 49 Mont. 582, 144 P. 162, 164:

" 'Until' is a word of limitation, used ordinarily to restrict that which precedes to what immediately follows it. *Its office is to fix some point of time or some event upon the arrival or occurrence of which what precedes will cease to exist."* (Italics added)

"The word 'until' is a restrictive word, and is of limitation, in its ordinary and usual sense". Marcellus v. Wright, 1921, 61 Mont. 274, 202 P. 381, 384.

Another definition is given in Bud Hoard Co. v. F. Berg & Co., 1929, 137 Okl. 16, 278 P. 273, 274: "The word 'until' is a word of limitation, and presupposes that, when the condition following such word shall become operative, *the precedent condition or status shall fall."* (Italics added) (And see 66 Corpus Juris, 60)

"Unless" implies a condition, without the occurrence of which a right *does not* come into being.

"Until" is a limitation of time, during which period a right *cannot* come into being.

When that period is ended, the right may come into being. See Maginn v. Lancaster, 1903, 100 Mo.App. 116; 73 S. W. 368, 372.

The use of these two descriptive words calls for a different interpretation of the effect of non-compliance with the two statutes.

Section 2957 of the Civil Code means: *A chattel mortgage is invalid if not recorded.* Section 195 of the Vehicle Code means: *A mortgage on a motor vehicle is not valid until recorded.*

Therefore, the cases which penalize, without grace, the failure to record or delay in recording, a chattel mortgage, when the rights of a lienholder or a trustee in bankruptcy have intervened, can have no application to a failure to record *which was remedied long before the lien of the trustee in bankruptcy accrued.*

Granting, therefore, that the mortgage here was not valid as against a lienholder until registered with the Motor Vehicle Department, its registration on July 7, 1938, made it a valid and subsisting obligation, and carried constructive notice to all.

As any rights which the trustee might have as a lienholder did not accrue until December 12, 1938, the title of the mortgagee is immune from challenge.

The order of the Referee dated March 1, 1939, is, therefore, reversed with direction to order the trustee to return the property to the claimant.