IKOVICH, Respondent, v. SILVER BOW MOTOR CAR CO., Appellant

No. 8515

Submitted February 16, 1945. Decided April 10, 1945.

157 Pac. (2d) 785

Messrs. Poore and Poore, of Butte, for the Appellant.

Mr. William B. Frame and Mr. M. S. Galasso, both of Butte, for the Respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an action in conversion to recover damages in the sum of $611.74 because of the alleged wrongful conversion of an automobile by defendant. The answer of the defendant sets forth that on the 21st day of November, 1942, plaintiff purchased from the defendant the automobile in question at the agreed price of $1,000; that the payments were to be made by surrendering a used car for which plaintiff was granted an allowance of $334, and the balance of $666, together with $54 insurance and finance charges or a total of $720, was to be paid by plaintiff in installments of $40 each, payable monthly from and after December 21, 1942, until fully paid.

It alleges that a conditional sales contract was entered into between plaintiff and defendant by the terms of which defendant retained title to the automobile but surrendered possession to the plaintiff who had the right to use it upon complying with the agreement. The conditional sales contract authorized the defendant, upon plaintiff's failure to comply with the terms of the contract, to retake possession, and to consider the agreement at an end. It authorized defendant in that event to sell the car and apply the proceeds to the contract debt and balance, if any, to be paid to plaintiff.

The answer alleges that plaintiff failed to comply with the terms of the contract in that he made but one installment payment of $40, and that this was made on December 21, 1942, but that the January, February and March installments were past due and unpaid and that on April 17, 1943, defendant took possession of the automobile in accordance with the terms of the conditional sales contract. Defendant asks that it have judgment against the plaintiff for the sum of $680, together with interest and costs, and that the automobile be sold at public auction and the proceeds applied to the expenses of sale, the amount due to the defendant, and the remainder, if any, to be

paid to plaintiff. A copy of the contract was attached to the answer.

Plaintiff, by his reply, admits the signing of the contract referred to in the defendant's answer, and alleges as new matter, in substance, that about the 28th day of December 1942 a dispute arose between plaintiff and defendant "with respect to the contract and agreement" and in compromise settlement of the dispute it was agreed that the plaintiff should have the automobile repaired and upon doing so the defendant would give to plaintiff credit for the amount the plaintiff would be obliged to expend for such repairs; that pursuant to this agreement plaintiff had the automobile repaired at a cost of $181.38, which he paid and which he requested defendant to apply as a payment on the purchase price of the car, but that defendant refused to do so.

The cause was tried to the court sitting with a jury. The jury brought in a verdict for plaintiff in the sum of $611.74, and judgment was entered accordingly. Defendant has appealed from the judgment.

Defendant contends that much evidence was permitted to be introduced, over its objection, as not within the issues in the case and tending to vary the terms of the written contract and that the undisputed competent and admissible evidence necessitated a directed verdict in its favor. Plaintiff was permitted to testify over objection upon the grounds above stated that when he signed the contract it was simply the printed form and that it contained no typewritten matter and that no one signed for the defendant; that defendant's agent told plaintiff that he would fill in the contract and for plaintiff to return later and he would be given a copy; that plaintiff cannot read English but he noticed it was signed only by himself; that he called upon the representative of defendant who said, "That's no good; we will make the new one, and we will sign and you sign on the other one." This he said was never done. Defendant's objection to this evidence should have been sustained and the evidence excluded.

There was no issue raised in the pleadings that the written contract was not properly signed. There was no suggestion in the pleadings that because of his inability to read plaintiff did not know what was in the contract nor was there any intimation in the pleadings that the written contract did not express the intention of the parties nor that typewritten matter had been added to it after it was signed. This evidence should have been excluded as not within the issues raised by the pleadings. Also it should be remembered that the signature of all parties to a contract is not always essential to its validity and binding force. 17 C. J. S., Contracts, Sec. 62, p. 410; 12 Am. Jur. 551. Here it was shown that the contract was drawn up in triplicate. One was sent to the registrar of motor vehicles and acted upon. It was not signed but the names of both parties were typewritten in the place provided for signatures. One was retained by the defendant and it was properly signed by both parties. The one delivered to plaintiff was not signed by defendant or its agent but was signed by plaintiff. Plaintiff treated the contract as binding. He surrendered his used car in exchange for the one covered by the contract and he made the first installment payment falling due on December 21, 1942. Also by his reply plaintiff treats the contract as having been properly executed and in effect but alleges that it was altered by a subsequent agreement. Defendant at all times treated the contract as binding. There was thus a written contract between the parties, though the copy delivered to plaintiff was unsigned by defendant, and the contract was subject to the usual rule that those who acquiesced in it will not be permitted to vary, alter or modify its terms by oral evidence. Manufacturers' & Merchants' Inspection Bureau v. Everwear Hosiery Co., 152 Wis. 73, 138 N. W. 624, 42 L. R. A., N. S., 847, Ann. Cas. 1914C, 449.

The written contract recited that the described automobile was to be delivered "without warranty except as to title," and recited that the buyer (plaintiff) "shall keep the same in good repair at his own expense."

Over objection plaintiff was permitted to testify that before buying the car he said to defendant: "Are you sure this car is in good condition, not been wrecked, or the motor burned in this car? Are you sure this car is in A-1 shape?" to which defendant's representative replied: "Absolutely; we haven't got any car wrecked, or with motor burned; this car is like new."; that plaintiff said: "If it isn't, I wouldn't give you $50 for it," and defendant said: "Yes, it is like new; we guarantee it like new, and if anything is wrong with it we will make it good." He further testified, "The car didn't have no pump. There was blowed oil all over the motor. It didn't have no compression, and everything wore out, and oil was coming all over the motor, and every time I went to slow down I kill the motor * * * all doors was out of line and out of shape, and one light was different than the other in front * * * and the bumper jerk right off the frame, and I can't tell you everything else that was wrong with it without a mechanic."

This evidence was objected to because not within the issues presented by the pleadings and because it was an attempt to vary the terms of the written contract. Both of these grounds were well taken. No issue of fraud, misrepresentation or breach of warranty was raised by the pleadings. Hence the objection that the evidence was not within the issues should have been sustained.

Furthermore, when the pleadings present no issue of fraud or mistake, as here, the general rule is that when the terms of a contract have been reduced to writing by the parties it must be considered as containing all the terms of the agreement and parol evidence cannot be resorted to, to alter the written contract. The rule is statutory in Montana. Sec. 10517, Revised Codes.

"The principle is well established and of general application, subject to certain exceptions, that when a contract has been reduced to writing the contents of such writing cannot be added to, contradicted, altered, or varied by parol or extrinsic evidence, and that such writing supersedes all oral negotiations

concerning its matter which preceded, accompanied, or led up to its execution. This was the rule at common law, and has been embodied in the statute law of this state." Webber v. Killorn, 66 Mont. 130, 132, 212 Pac. 852, 853, and see Continental Oil Co. v. Bell, 94 Mont. 123, 21 Pac. (2d) 65.

We may say in passing, though the question is not raised in the pleadings, that usually plaintiff's inability to read does not alter the rule. A person unable to read is still bound by contracts which he signs and which are otherwise valid and enforcible. W. T. Rawleigh Co. v. Washburn, 80 Mont. 308, 260 Pac. 1039; Sanden v. Northern Pac. R. Co., 43 Mont. 209, 115 Pac. 408, 34 L. R. A., N. S. 711; Zimmerman v. Mutual Life Ins. Co., 90 Mont. 336, 3 Pac. (2d) 278.

"So, where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." 17 C. J. S., Contracts, Sec. 139, p. 494.

This rule of course would not be true if there were allegations of fraud, mistake or undue influence but, as before stated, no such allegations were presented by the pleadings in this case.

Was it proper to receive evidence of the alleged subsequent agreement regarding the repair of the car and of defendant's promise to credit the repair bill as payments under the contract? As above noted, this altered the written contract. "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." Sec. 7569, Revised Codes. The subsequent agreement was not in writing. It was not an executed oral agreement, for "an executed contract is one, the object of which is fully performed. All others are executory." Sec. 7552, Revised Codes, 1935.

"An oral agreement altering a written agreement is not

executed unless its terms have been fully performed, and performance on the one side is not sufficient. There must be a complete execution of the obligation of both parties in order to bring the modification within the terms of the statute." *Continental Oil Co. v. Bell, supra* [94 Mont. 123, 21 Pac. (2d) 67]. This is the well established rule in California under statutes identical with ours. 6 Cal. Jur., Contracts, Sec. 226, p. 375, et seq. Here the president of defendant denied emphatically that he had entered into any subsequent agreement regarding the repair of the car. He admitted that plaintiff requested that he pay a repair bill but that he told plaintiff "We had nothing to do with the repairs on his car." If evidence on the point were admissible under our statute, then of course this conflict in the evidence would present a jury question. But under our statutes this evidence was inadmissible. It is to be noted that there is nothing in the record to show any act on the part of defendant in recognition of the alleged subsequent agreement and hence the doctrine of estoppel or waiver has no application.

The purpose of our statute allowing a written contract to be altered only by a writing or by an executed oral agreement would be frustrated if performance on the one side only is sufficient to work such an alteration by oral agreement as against one who has done nothing in recognition of the alleged oral contract and who denies its existence. Absence of such acts on the part of defendant here makes this case entirely different from those of Inter-State Lumber Co. v. Western Mortg., etc., Co., 51 Mont. 190, 149 Pac. 975; Roberts v. Sinnott, 55 Mont. 369, 177 Pac. 252, and Kester v. Nelson, 92 Mont. 69, 10 Pac. (2d) 379. Likewise the case is different from that of Griffith v. Cedar Creek Oil & Gas Co., 91 Mont. 553, 8 Pac. (2d) 1071, where the subsequent oral agreement was fully executed by both parties; and that of Webber v. Killorn, 66 Mont. 130, 212 Pac. 852, where there was full performance by the parties of that part of the contract as to which parol evidence was received.

276

It should be remembered too that since the written contract involved a price in excess of $200, and a contract running for more than one year, it was within the statute of frauds. Secs. 7519, 7591 and 10613, Revised Codes. While at common law contracts not within the statute of frauds may be altered by a new agreement in parol (2 Williston on Contracts, Rev. Ed., Sec. 591, pp. 1702, 1703; 6 Williston on Contracts, Rev. Ed., Sec. 1828, p. 5178), yet it must be kept in mind that we are not concerned here with the common law rule but with the rule prescribed by statute and with a contract within the statute of frauds. Statutory restrictions against the modification of a written contract by parol must be complied with to have a valid modification. 17 C. J. S., Contracts, Sec. 377. There is a difference also between a contract required by the statute of frauds to be in writing and one not within the statute of frauds. 2 Williston on Contracts, Sec. 593, p. 1705 et seq.

"The general rule is that parties to a written agreement coming within the provisions of the statute may not, by mere oral agreement, alter one or more of the terms thereof, and thus make a new contract, resting partly in writing and partly in parol, at least if the modification is of a material term of the contract, and, as hereinafter indicated, has not been executed. The contract can be modified only in the manner in which the contract could be legally made enforceable in the first instance." 37 C. J. S., Frauds, Statute of, Sec. 232, pp. 731, 732. The general rule certainly has application in this state in view of our statute, Sec. 7569, which prohibits the alteration of any contract in writing except by another contract in writing or by an executed oral agreement. Evidence of the subsequent oral agreement was inadmissible under our statutes.

Plaintiff contends that even though we treat the written contract as binding, and that it cannot be altered by parol, we still must hold that defendant had no right to take the car because the written contract merely gives the right to take it for the purpose of sale and that defendant has made no attempt to sell it but, on the contrary, notified plaintiff by letter that

if he would promptly pay the overdue installments it would redeliver the car to him. This offer to plaintiff was not necessary according to the terms of the contract but it gave plaintiff more consideration than the contract called for and we think plaintiff cannot be heard to complain on that account. Defendant now seeks recognition of the right to sell the car and it has that right under the contract.

Plaintiff also contends that defendant was guilty of conversion of the automobile because of the manner in which it was taken from his possession. The evidence discloses that the car was parked on a vacant lot behind plaintiff's house with the front wheels in the alley. Defendant took it without plaintiff's previous knowledge or consent except as that consent was given in the written contract of sale. Defendant would not have been justified in using force to obtain possession of the car. But there was no force used by defendant in this case. Force is not ''necessarily involved where the vendor under a conditional sale of an automobile seizes the vehicle when he finds it parked in front of the vendee's premises.'' 47 Am. Jur. ''Sales'' Sec. 953; Gaffney v. O'Leary, 155 Wash. 171, 283 Pac. 1091. And ''according to some authority, the conditional vendor of an automobile, having demanded possession of the vehicle upon the vendee's default in payments and having been refused possession by the vendee, does not resort to force, violence or even stealth in obtaining possession of the vehicle by towing it away to a place for storage upon finding it parked in front of the vendee's dwelling house and locked.'' 47 Am. Jur., Sales, Sec. 953, note 19; First Nat. Bank & T. Co. v. Winter, 176 Okla. 400, 55 Pac. (2d) 1029. This case bears no analogy to that of Franklin v. Spratt, 174 Ark. 268, 295 S. W. 26. In that case defendant actually sold the car in question, which was valued at $850, for $150. Of course that amounted to conversion. The only point the court decided was that error had been committed in the instructions relative to the measure of damages. Likewise the case of Voltz v. General Motors Acceptance Corp., 332 Pa. 141, 2 A. (2d) 697, 698, is far dif-

ferent from this case. There the defendant took the car at 2:30 a.m. by removing it from plaintiff's garage, and the Supreme Court alluded to the fact that defendants admitted that they saw the automobile in front of plaintiff's home on the night preceding the morning they took it, but did not attempt to take it at that time or communicate with Voltz and apprise him of their intentions, and that they testified, "It was easier to take it out of the garage." Had the defendant taken the car in broad daylight, as in this case, or on the evening preceding the morning when they took it and after plaintiff was notified of defendant's intention so to do the court doubtless would have held there was no conversion, for otherwise there would have been no occasion to refer to the fact that they did not take it at that time. Nor do we believe that the statement in Uhl v. Wexford Co., 268 Mich. 473, 256 N. W. 488, 489, that "the right of the vendor to re-enter into possession depends, not on contract, but on law" has application here. In that case the court was dealing with a contract which was silent as to the right of the vendor to retake possession. In such a case the law and not the contract would control. In this case the contract authorizes the vendor to retake possession upon default. When the matter is covered by contract it controls unless the contract is invalid as against public policy or otherwise, which is not contended for here.

Defendant assigns error also in the giving of certain instructions over its objection, and in the refusal to give others. Since under the admissible and competent evidence in the case there is but one result possible, and that is a judgment for demendant, there is nothing for a jury to pass upon in the case. No useful purpose would be served in discussing the propriety of the instructions given and refused. The court erred in denying defendant's motion for a directed verdict.

The judgment is reversed and the cause remanded with directions to enter judgment for defendant as prayed for in its answer.

Mr. Chief Justice Johnson and Associate Justices Morris and Cheadle concur.

Mr. Justice Adair (dissenting):

My view of this case is as follows:

Four men came to the home of plaintiff, No. 3032 Dickson street in Butte, on April 17, 1943, and removed from plaintiff's premises a Dodge sedan automobile theretofore purchased by him from defendant on a conditional sale contract. As the ignition and motor were locked, the car could not be moved on its own power so a wrecker was used to raise the rear end and tow it away. The automobile was taken without the knowledge or consent of the plaintiff who was asleep at the time. When the plaintiff discovered the car was gone he reported his loss to the police department of the city of Butte and thereafter learned that the defendant had sent the men and wrecker for the car and that they had towed it to defendant's warehouse where it was detained by defendant.

Following the taking defendant wrote plaintiff a letter wherein was stated: "If you will promptly come to our office and pay the amount necessary to bring your payments under the contract up to date we will redeliver the automobile to you."

Plaintiff claims that at the time of the taking he owed no past due installments; that all matured installments had been paid and that in addition he was then entitled to a further credit of $61.38 on future due installments.

Two days after the taking plaintiff commenced this suit against defendant for the conversion of the automobile.

The defense was that plaintiff had defaulted in three installment payments and that such defaults entitled defendant to repossess the automobile.

Plaintiff denied that he was in default and charged that defendant had refused to comply with its oral agreement to credit plaintiff with the amount of a certain repair bill. Plaintiff also challenged the right of defendant to take the car without plaintiff's knowledge or consent; against his will and in a manner not authorized by statute.

Plaintiff delivered to defendant and the latter accepted title and possession of a 1936 model Dodge automobile owned by plaintiff as the down payment of more than one-third of the agreed purchase price and thereupon defendant delivered to plaintiff the car in controversy, a 1941 Dodge sedan, and plaintiff agreed to pay the balance of the purchase price in monthly installments of $40 each, the first of which was to become due on December 21, 1942. A partly printed and partly typed conditional contract of sale was signed on November 21, 1942, evidencing the sale agreement.

Before the first installment payment became due plaintiff discovered that the motor in the sedan was so worn and mechanically defective that it could not be operated unless necessary repairs were made. These facts were communicated to defendant and on December 20, 1942, plaintiff requested defendant "to repair the car and put it in shape."

Plaintiff testified that defendant said to him: "Go ahead, we got no mechanic here; take it to a garage and have it fixed and we will make it good. * * * We will take it off your payments."

Plaintiff testified that he thereupon paid the first installment payment of $40 due December 21, 1942, and six days later took the automobile to the Dodge agency in Butte where the necessary repair work was done at a cost to him of $181.38; that he then presented the bill for such repair work to defendant for the promised credit and that defendant refused to give or allow same or any part thereof.

Plaintiff testified that he personally presented the repair bill to the president of the defendant company and that "he said: 'We are busy now, you are not in a rush for it are you?' I said, 'No, I am not in a rush but this has to be paid'. He said 'come around some other time when we are not so busy', and I said 'all right' and I stuck the bill in my pocket and went home."

Thereafter and about February first defendant's president asked plaintiff for the January installment payment whereupon, according to plaintiff's testimony, the latter handed the $181.38

repair bill to the president, saying: " 'what you think, I am going to give you money on top of this? I want you to give me a receipt for this', I said, 'like you told me, take off of the payments'." Whereupon the president left with the statement, "I will see Mr. Russell about it", Mr. Russell being defendant's sales manager.

Plaintiff further testified: "He came back about a month from then again and said, 'You got any money for me?' I said, 'What kind of money you mean? Why don't you take this off the payment like you people promised me?' He said, 'We can't pay no repair bill, we are going to take that car', and I said 'You are not going to take that car', and he said, 'We will if we have to steal it', and he went out and I never seen him no more."

While the conditional sale contract provided that the 1941 Dodge sedan was to be delivered to plaintiff "without warranty except as to title" and that the purchaser "shall keep the same in good repair at his own expense" yet such provisions were for the sole benefit of the seller who was and is privileged to thereafter agree to either waive or modify such provisions. There is nothing in either the contract or the law to prohibit such waiver or modification. In Inter-State Lumber Co. v. Western Mortgage & Warranty Title Co., 51 Mont. 190, 149 Pac. 975, 976, this court considered the effect of an oral agreement made subsequent to a written contract and said: "But, assuming the clause referred to does cover materials and is to be read into the contract, that would not prevent what the evidence tends to establish, viz., the abrogation of this clause by subsequent oral agreement of the parties, or its waiver, without writing, by the party for whose protection it was intended." (Citing cases.) In Roberts v. Sinnott, 55 Mont. 369, 177 Pac. 252, the original written contract was supplemented by oral agreement and this court said: "The provision of the contract above was manifestly intended for the protection and benefit of the owner, and no reason can be suggested why it might not be waived."

" 'By the general rules of the common law, if there be a contract not within the Statute of Frauds which has been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to, or subtract from, or vary, or qualify the terms of it, and thus to make a new contract, which is to be proved, partly by the written agreement, and partly by the subsequent verbal terms engrafted upon what will be thus left of the written agreement.' * * * 'Whenever two men contract, no limitation self-imposed can destroy their power to contract again.' " 2 Williston on Contracts, Rev. Ed., Sec. 591, pp. 1702, 1703.

In Kester v. Nelson, 92 Mont. 69, 10 Pac. (2d) 379, 380, this court said:

"The right of the parties to an executory contract to terminate it by mutual consent exists independently of any agreement permitting them so to do; and it is immaterial whether such termination be characterized an abandonment, mutual rescission, modification, or waiver. The effect is the same, to discharge the parties from obligations previously assumed. * * *

"There can be no question but what a contract may be mutually abandoned or modified by the parties at any stage of performance, and each of the parties released from further obligation on account thereof; that it may be accomplished by parol, and the fact of its having been done established by evidence of the acts and declarations of the parties. (Citing cases.)

"The modification of the contract of sale * * * was established by the testimony of witnesses as to the oral statements and declarations made by the parties in their lifetime in the presence of witnesses; and while such testimony is not the most satisfactory, yet by reason of necessity it is admissible. (Citing cases.)

"The evidence presented a question of fact for the jury to decide as to whether the contract of sale was modified or rescinded under proper instructions as to the law."

In 6 Williston on Contracts, Rev. Ed., Sec. 1828, p. 5178, it is said: "A contract in writing, but not required to be so by the Statute of Frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its terms some or all of the provisions of the original written contract." See also, Klein Norton Co. v. Cohen, 107 Cal. App. 325, 290 Pac. 613; Lacy Mfg. Co. v. Gold Crown Mining Co., 52 Cal. App. (2d) 568, 126 Pac. (2d) 644; Pearsall v. Henry, 153 Cal. 314, 95 Pac. 154, 159.

The plaintiff testified that subsequent to the signing of the written conditional sale contract and before there was any breach thereof defendant made the oral agreement pursuant to which plaintiff caused the work repair to be done on the car, the cost of which defendant agreed to credit on the installment payments to become due; that plaintiff fully performed the contract and that he remained in continuous possession of the automobile after the due dates of the January, February and March installments without being declared in default by defendant.

Whether the parties had made such a contract was a question of fact for the determination of the jury. The jury saw all the witnesses and heard them testify in the case. The jury accepted the testimony of plaintiff's witnesses and it rejected the testimony of the defendant's witnesses on that issue. By the verdict it was established that such oral contract had been entered into by the parties.

It was competent for the plaintiff to testify as to the terms of such subsequent contract. In Lowenstern Bros., Inc., v. Marks Credit Clothing, Inc., 319 Ill. App. 71, 48 N. E. (2d) 729, 733, it was held that the written order of the defendant could be modified by the subsequent oral agreement between the parties. In its opinion the court said: "Of course there can be no question that evidence of modification after the execution of the contract is admissible testimony. It does not appear, from any thing that the defendant has cited as authority, why the con-

versation of the parties as to the subsequent modification of the contract was not admissible as evidence."

In Griffith v. Cedar Creek Oil & Gas Co., 91 Mont. 553, 559, 8 Pac. (2d) 1071, 1073, this court said: "Under the terms of the contract the lease would have expired on September 15, 1927, on the failure of the defendant to make the payment required by the contract. However, before a default was suffered, at the solicitation of the defendant, the plaintiffs agreed to extend their time of payment for an indefinite period. This oral agreement was 'executed' in that defendant remained in possession and exercised dominion and control over the property after the date on which, under the written lease, its rights would have ipso facto terminated, and this with the consent of the plaintiffs. Consequently the written contract was modified by an executed oral agreement."

In Webber v. Killorn et al, 66 Mont. 130, 212 Pac. 852, 853, this court said: "Our Code specifically provides that a written agreement may be modified by an executed oral agreement (Sec. 7569, Revised Codes 1921), in which case the evidence of the act of executing the oral modification is deemed of sufficient strength and reliability to take rank with the writing itself, and the writing ceases to be the only evidence of the engagement of the parties. Hence parol evidence of such executed oral modifications of a written contract is admitted. For a like reason, where the parties first execute a portion of their engagement and then commit the remainder to writing it is proper to admit parol evidence of the part which has been executed.

"If the testimony produced on behalf of the defendants, and objected to by the plaintiff, is true, defendants paid the $90 and Bartells surrendered the possession of the buildings to them as owners prior to the signing of the contract and they have been in lawful possession as owners ever since. This part of the deal became executed, and, being a part of the inducement for making the written contract to purchase the land, the writing is not the only competent evidence of the engagement of

the parties. The defendants were not relying alone on proof of what was said in seeking to establish their claim. The evidence objected to is of matters more substantial in character; namely, what was done.

"The trial court did not err in permitting the executed portion of the transaction not contained in the writing to be established by parol."

In Franklin v. Spratt, 174 Ark. 268, 295 S. W. 26, a dispute arose concerning the amount of installment payments set forth in a conditional sale contract covering an automobile, the purchaser contending that by an agreement made subsequent to the original contract the seller had agreed to accept $35 monthly instead of $45 called for by the original contract. The purchaser left the car with the seller for repairs but the latter thereafter refused to return same to the purchaser unless he would pay the repair bill and the entire balance of the purchase price. This detention of the car by the seller was held to be an unlawful conversion.

In Voltz v. General Motors Acceptance Corporation, 332 Pa. 141, 2 A. (2d) 697, 699, the purchaser of an automobile sold under an installment contract placed the car in his garage for the night leaving the garage door open about three feet. Without the knowledge or consent of the purchaser, two men in the employ of the defendant finance company came to the purchaser's home about 2:30 a.m. and repossessed the car by pushing the car from the garage to the street before they started the engine. Thereupon the purchaser brought an action in replevin against the finance company to secure possession of the car and the jury returned a verdict for plaintiff for the value of the car, for detention damages and for $2,500 as punitive damages. The trial court characterized the conduct of the defendant and its agents as "outrageous and highhanded." The supreme court thought "punitive damages in the sum of one thousand dollars sufficiently punishes the defendant for its unlawful act", reduced the judgment by $1,500 and affirmed the judgment on verdict as so modified.

Defendant had been told by plaintiff that he would not permit defendant to take the car. Under such circumstances defendant should not have taken the law in its own hands and sent a force of men to plaintiff's home to repossess the property. This force outnumbered plaintiff four to one but since plaintiff was in his bed and asleep when the men arrived the locked car was taken from plaintiff's premises without awakening plaintiff or starting a fight.

Upon plaintiff's refusal to surrender possession, then defendant was left to his remedies under the statute, Sec. 7597, Revised Codes as amended, for "the right of the vendor to re-enter into possession depends, not on contract, but on law." Uhl v. Wexford Co., 268 Mich. 473, 256 N. W. 488, 489. "Mere title to and right to possession of personal property on the premises of another is not a defense for entering and taking it." Berns v. P. A. Starck Piano Co., Mo. App., 296 S. W. 239, 242. See also, Mitchell v. Automobile Sales Co., 161 Tenn. 1, 28 S. W. (2d) 51, 83 A. L. R. 955.

In McClellan v. Gaston, 18 Wash. 472, 51 P. 1062, 1063, the court said: "Because a party to a contract violates his contract, and refuses to do what he agreed to do, is no reason why the other party to the contract should compel the performance of the contract by force. The adoption of such a rule would lead to a breach of the peace, and it is never the policy of the law to encourage a breach of the peace. The right to an enforcement of this part of the contract must, in the absence of a consent on the part of the mortgagor, be enforced by due process of law, the same as any other contract."

In Roberts v. Speck, 169 Wash. 613, 14 Pac. (2d) 33, 34, the court said: "The reason for the rule requiring a person to resort to process of law in undertaking to acquire possession of property to which he is entitled by virtue of a contract with the person in possession, when such party refuses to peaceably surrender it, is the same whether the possession be acquired by virtue of the terms of a chattel mortgage or a conditional bill of sale. The law does not encourage people to resort to a breach

of the peace, nor does it encourage officers of the law to deprive any person of the possession of property, when such officers are without legal process.''

Generally speaking, any appropriation of property without the concent of the owner constitutes conversion.

''Conversion, as a tort, consists either in the appropriation of the personal property of another to the party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's.'' Prudential Insurance Co. v. Thatcher, 1936, 104 Ind. App. 14, 20, 4 N. E. (2d) 574, 577; Fagan v. Babacz, 1936, 102 Ind. App. 558, 1 N. E. (2d) 299.

In my opinion there is ample evidence in the record to justify the jury's verdict and to show that defendant had wrongfully exercised dominion and control over the automobile in exclusion of and in defiance of the rights of plaintiff as possessor thereof. Sullivan & O'Brien, Inc., v. Kennedy, 107 Ind. App. 457, 25 N. E. (2d) 267; Commercial Credit Co. v. Spence, 185 Miss. 293, 184 So. 439.