J. Herb SMITH and M. M. Donaho, d/b/a Smith-Donaho Contracting Company, a co-partnership, Plaintiffs,

v.

PHILLIPS PIPE LINE COMPANY, a Delaware corporation, Defendant (by original summons), and Smith Contracting Corporation, a Texas corporation, Additional Defendant (on counter-claim and cross-claim) and Hartford Accident & Indemnity Company, a Connecticut corporation, Additional Defendant (on cross-claim).

No. 3063.

United States District Court, N. D. Oklahoma.

Jan. 8, 1955.

Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., for plaintiffs.

Green & Feldman, Tulsa, Okl., Kothe & Huff, Tulsa, Okl., and Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Okl., for defendants.

WALLACE, District Judge.

The plaintiffs, J. Herb Smith and M. M. Donaho, citizens of Texas, doing business as Smith-Donaho Contracting Company, a copartnership, bring this action against the defendant, Phillips Pipe Line Company, a Delaware corporation, to recover sums allegedly due for pipeline work done by plaintiffs for defendant Phillips in Kansas and Missouri. Plaintiffs seek recovery for pipe laid by them while working as the assignee of a written contract originally negotiated between defendant Phillips and the Smith Contracting Corporation, a Texas corporation (additional defendant on counterclaim and cross-claim). Plaintiffs urge they are entitled to receive more money than the amount called for in the written contract [1] for the reason that inclement weather, not within the contemplation of the contracting parties was encountered during the pipeline work; [2] and, place their request for recovery upon two alternate theories: (1) The original written agreement was supplanted by an oral contract whereby plaintiffs gave up their right to await the carrying out of the written agreement until working conditions returned to normal and defendant Phillips in turn agreed to pay the plaintiffs the actual cost of construction of said line under the conditions then existing; or, (2) The work performed by plaintiffs pursuant to the written contract under the existing weather conditions constituted "extra work" above and beyond that work called for under the terms of the written agreement. Defendant Phillips, in answering, denies it owes plaintiffs any sum except that specifically called for under the express terms of the written contract and in addition counterclaims against plaintiffs Smith-Donaho and cross-claims against Smith Contracting Corporation and Smith Corporation's surety, Hartford Accident and Indemnity Company, a Connecticut corporation, alleging that the contractors' obligations under the written agreement were not fully discharged.[3] Hartford cross-claims against Smith Corporation pursuant to its right of indemnity and subrogation and against plaintiffs Smith-Donaho and their surety, Houston Fire and Casualty Insurance Company, a Texas corporation, for any amount recovered by Phillips in this action against Hartford; and, Houston cross-claims against Smith-Donaho, asking for indemnity as to any such judgment.

After considering all the introduced evidence and the briefs of counsel pertaining to plaintiffs' first cause of action, the Court has concluded that plaintiffs have failed to establish a right to recover from defendant Phillips. Plaintiffs' cause fails for several distinct reasons:

■ (1) *A written contract cannot be modified by an unexecuted oral agreement.*

■ The gravamen of plaintiffs' complaint against defendant Phillips is that various employees and officials of the de-

---

1. The bid made by Smith Contracting Corporation and accepted by defendant Phillips set forth a per lineal foot price on the 40.6 miles of pipeline to be laid. See Prime Contract and attached Price Schedule (PX–1).

2. Plaintiffs contend that where normally in the area in question during the time the instant contract was to be performed, i. e., between December 17, 1951, and February 23, 1952, the ground is frozen hard, that while the instant contract was being carried out unseasonably mild weather set in, causing the ground to be a veritable quagmire.

3. Phillips consented to the subletting by Smith Contracting Corporation to plaintiffs Smith-Donaho; however, Smith Corporation was relieved of no obligations to Phillips by such sub-contract (See DX 6, 7); and, Hartford, Smith Corporation's surety, also consented to such subletting (See DX 13).

fendant company by oral promises wherein assurances were given that plaintiffs would lose no money induced the plaintiffs to continue work called for in the original written agreement between the parties when under such contract, due to unforeseen inclement weather conditions, plaintiffs were not obligated to so continue; and, that such promises amounted to an oral modification of the provision of the written agreement dealing with the compensation to be paid the plaintiffs.

Clearly, the Oklahoma law prohibits the plaintiffs' assertion. Although it is unfortunate that plaintiffs in proceeding on the project in question incurred expense well beyond the contract price agreed to by defendant Phillips,[4] the Oklahoma legislature has pointedly forbade the altering of legal rights solemnly established by written agreement by mere parol understandings, where such oral understandings, have not been entirely executed by both parties.[5] The alleged parol agreement in question has at most been executed by only one party.[6]

(2) *The alleged oral agreement, even if not barred by statute, is unenforceable due to a lack of consideration running between the parties.*

The consideration which plaintiffs urge supports the alleged parol understanding is the detriment suffered by plaintiffs in continuing to lay pipe in conformity with the written specifications at a time when the weather conditions were extremely adverse. Plaintiffs assert that when they advised defendant's employees that no further work would be done on the pipeline in question until the ground once again became reasonably adapted for such work the defendant's employees assured the plaintiffs that if plaintiffs would continue with the pipeline work as outlined in the written agreement and proceed with the laying of pipe as rapidly as possible, the defendant company would see to it that the

---

4. Plaintiffs, in their Fourth Amended Complaint, allege that they lost a total of $194,880.60 on the job in question, having incurred the expense of $499,120.58 and only receiving from Phillips $304,-239.98.

5. 15 Okl.St.1951 § 237 provides: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." As mentioned by the Montana Supreme Court in construing an identical statute in Ikovich v. Silver Bow Motor Car Company, 1945, 117 Mont. 268, 157 P.2d 785, 788: " 'An oral agreement altering a written agreement is not executed unless its terms have been fully performed, and performance on the one side is not sufficient. There must be a complete execution of the obligation of both parties in order to bring the modification within the terms of the statute.' Continental Oil Co. v. Bell, supra (94 Mont. 123, 21 P.2d [65], 67). This is the well established rule in California under statutes identical with ours. * * * The purpose of our statute allowing a written contract to be altered only by a writing or by an executed oral agreement would be frustrated if performance on the one side only is sufficient to work such an alteration by oral agreement as against one who has done nothing in recognition of the alleged oral contract and who denies its existence. * * *"

6. Also, promissory estoppel has no application to the facts in the instant case. As recognized by Judge McDermott in General Paint Corporation v. Kramer, 10 Cir., 1932, 57 F.2d 698, 702, in refuting the argument that estoppel could be used to in effect alter the terms of a written contract: "It is claimed that defendants are estopped to deny the oral agreement because they have retained the assignments which they secured by virtue of it. This is reasoning in a circle. If proof of the oral agreement is inadmissible, a breach of it cannot by estoppel make the proof admissible. * * *" And as observed in the recent Oklahoma case of Bearden v. Smith, Okl.1954, 274 P.2d 1015, 1017: "The fact that one of defendants' employees induced him (plaintiff) to perform the work in a manner or at a time which caused additional expense, does not change the situation. * * * The plaintiff was at liberty to refuse to comply with any request or direction of an employee if it was outside the terms of his written contract. To hold otherwise, would be to strike down the force and effectiveness of a written contract, in violation of the provisions of 15 O.S.1951 § 237."

plaintiffs would not lose any money in carrying out such contract.

■■ It is fundamental that the discharge of a promise previously made and for which the promisor is legally obligated cannot stand as new and separate consideration for a subsequent agreement.[7] This principle is directly applicable to the instant case. All of the work done by plaintiffs was work specifically called for in the written contract. In addition, at the time of the execution of the original written contract all parties clearly understood that the work was to be done between December 17, 1951, and February 23, 1952.[8] Obviously, the weather to be encountered in Kansas and Missouri at such time of the year was one of the items to be considered by the bidder in determining the total cost figure bid and the premature thaw in question cannot be used to vitiate the contractual duty of the plaintiffs to finish the job in question by February 23, 1952.[9] Even if defendant's employees did induce plaintiffs to continue work by various promises of reimbursement, plaintiffs in proceeding merely did that which they were already legally obligated to do under the prior valid written agreement and hence suffered no legal detriment. This rationale also dispenses with the issue of fraud urged by plaintiffs in their brief. Regardless of the inducements held out by defendant's employees, plaintiffs were at most prevailed upon to do what they already contractually owed. There can be no element of fraud in per-

---

7. The general principle is stated in 17 C. J.S., Contracts, § 112, p. 465: "The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus, a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration * * *." See Home Owners' Loan Corporation v. Thornburgh, 1940, 187 Okl. 699, 106 P.2d 511; Jackson Materials Co. v. Grand River Dam Authority, 1946, 197 Okl. 353, 170 P.2d 552; Watson v. American Creosote Works, 1938, 184 Okl. 13, 84 P.2d 431.

8. On November 28, 1951, the Smith Contracting Corporation submitted its bid (See DX 1) and observed in part: "*Having examined the specifications* for the construction of approximately 82.9 miles of 10¾" O.D. pipe line loops and 0.6 mile of 8⅝" pipe line, consisting of the Paola, Harrisonville, Leeton, and Rosebud Station loops, *as well as the site of the work, and being familiar with all conditions bearing upon the execution thereof*, the undersigned proposes to furnish all labor, equipment, materials, supplies and services necessary and incidental to the completion of the work as specified, in accordance with the following schedule of prices: * * *". (Emphasis supplied.) In addition to proposing in its bid to complete the job in question "with-in 70 calendar days", Smith Corporation in the Prime Contract signed December 11, 1951, specifically agreed: "(2) Commencement and Completion of Work: Contractor agrees to begin said work on or before December 17, 1951, and to proceed diligently with said work to completion; and to complete same on or before February 23, 1952. Time is of the essence of this agreement." (PX 1.)

9. As observed by Williston on Contracts (Rev.Ed.) Vol. 6, § 1964: "Difficulties in the construction of a building or other undertaking in process of construction, due to unusual weather or conditions of soil or the like, do not free the contractor from liability for breach of his promise to complete the structure by a given day. Vagaries of the weather are of such ordinary occurrence that possible delay from that cause should be anticipated. The parties cannot be supposed to have contracted on the assumption that the weather would be continuously favorable." The following cases hold that unfavorable weather does not alter the contractor's duty to comply with his agreement. Reichenbach v. Sage, 1896, 13 Wash. 364, 43 P. 354; Brent v. Head, Westervelt & Co., 1908, 138 Iowa 146, 115 N.W. 1106, 16 L. R.A.,N.S., 801; Stevens & Elkins v. Lewis-Wilson-Hicks Co., 1916, 170 Ky. 238, 185 S.W. 873; Alexander v. Good Marble & Tile Co., Tex.Civ.App.1928, 4 S.W. 2d 636. Also, cf. Bearden v. Smith, footnote 6, supra, where the Oklahoma Court ruled that performance was not excused nor additional compensation allowed because of unforeseen difficulties encountered.

suading a promisor to discharge an obligation in conformity with the terms of an existing agreement.

█ Secondly, the plaintiffs failed to establish that the employees of defendant Phillips did in fact promise to protect plaintiffs from any financial loss on the job in question. The evidence in its entirety demonstrates that at most the officers and employees of defendant Phillips held out to plaintiffs the hope that the plaintiffs might receive aid from Phillips because of the unfortunate circumstances surrounding the job in question, but such representations by said employees were more nearly in the nature of a "gratuity", than that of a definite promise to specifically remunerate plaintiffs.[10]

█ The Court also fails to find merit in plaintiffs' alternative contention under their second cause of action that the work in question, being performed in unseasonably bad weather, constituted "extra work" under the terms of the written agreement. As defined in the contract, extra work consisted of work not called for expressly in the written agreement and not included in the contractor's bid.[11] The work performed by plaintiffs, except that work expressly approved as extra while the job was in process, was work embraced by the written contract and cannot be deemed "extra", even though additional time to perform such work may have been required.[12]

As to defendant Phillips' counterclaim and cross-claim against plaintiffs,

10. As late as May 5, 1952, the plaintiffs by implication recognized that the defendant Phillips was not contractually bound to pay the actual cost of the job when they wrote (DX 20): "We are asking your consideration to the extent of our cash investment in this job for which we do not, to date, have approved by you for payment to us, as we are willing to assume our loss for the use of our equipment, our time spent by our organization and the general overhead expense of performing this work for you, which means that we still will be taking ourselves approximately a $100,000.00 business loss. We will be glad to work with you on a joint audit of exact figure verifications with your designated representative and ask your earliest possible consideration for relief in this instance." Illustrative of the indefinite nature of the promises given by Phillip's employees is evidenced by the notes made by plaintiff's agent Doyle while working on the job (PX 3): "I talked to Mr. Fitzgerald, the Phillips Company Chief Representative here, today about shutting the job down until more favorable working conditions prevail. I explained that working under these adverse conditions was costing the contractor an immense added cost, far above our bid price per foot and that we couldn't continue. *He told me that he had been in the employ of the Phillips Company almost twenty (20) years and that he had never known the Phillips Company to let a contractor go broke or take a loss while constructing a pipe line for them.* He said that the Phillips Company needed the 10″ line as quickly as they could get it *and that he felt sure*

*they would gladly reimburse us for any loss* as the added revenue would readily warrant paying the contractors added cost incurred while constructing this line under these adverse working conditions." (Emphasis supplied.)

11. The Prime Contract (PX 1) under "(5) Alterations:" provided in part: "Contractor shall not be entitled to any payment for extra work performed, unless such work shall have been specifically authorized in writing by the Engineer. The amount and method of payment for any such extra work shall be approved by both Contractor and Engineer before such work is commenced. The contractor shall submit to the Company on the first and fifteenth of each month, a detailed statement of the amounts due for extra work. The amounts shall be separated according to extra work orders and reference shall be made on the statement to the order number or date of letter issued by the Engineer as authorization for the work." This provision was specifically called into play a number of times, but each time the extra work requested was authorized in writing by the Engineer. See amendments attached to Prime Contract (PX–1).

12. As aptly phrased by Judge Savage in ruling upon a motion in this case prior to the assignment of this case to this court: " * * * I don't see how—referring to your second cause of action—this could be considered extra work when you performed only the work that was agreed to be performed by the terms of the contract. It wasn't extra work; it was just extra expense to the contractor

Smith-Donaho and Smith Corporation, the evidence indicates that plaintiffs failed to fully discharge those portions of the written contract which called for backfill and clean up after laying the pipe [13] and which required plaintiffs to make settlement for all right of way damages occasioned by plaintiffs' operations. Under the contract plaintiffs were obligated to complete the backfill and clean up in a workmanlike manner even if to so do required postponement and greater expense because of such postponement.[14] Also, under the Prime Contract, plaintiffs were bound to pay for all damages resulting from their work, either within or without the right of way, except for damages to land, pasture, shrubs, trees, crops and vegetation caused within the right of way while the terms of the contract were being fulfilled in a workmanlike manner.[15]

■ Inasmuch as there is insufficient evidence before the Court to at this time make a final determination of the recovery due Phillips under its counterclaim and cross-claim, unless the parties can stipulate as to such amounts a further hearing will be held. At such hearing evidence will be received bearing on the following facts: (1) The amount due under the Prime Contract for work actually performed thereunder by plaintiffs; (2) The cost to defendant Phillips of completing the clean up; (3) The amount of right of way claims settled and paid by Phillips properly attributable to plaintiffs under the written contract; and, (4) The attorneys' fees due Phillips because of the contractors breach of covenants.

Plaintiffs Smith-Donaho and defendants Hartford and Smith Corporation are separately and jointly liable to defendant Phillips for any proved cost of clean up and right of way damages covered by the written contract in question, together with reasonable attorneys' fees incurred because of any covenant breaches. It follows that under Smith Corporation's indemnifying agreement with Hartford in securing Hartford as surety, Smith Corporation is liable for any expenses Hartford is ultimately out incident to the action on such bond. Smith Corporation and Hartford are in turn to be held harmless by plaintiff Smith-Donaho and plaintiff's surety Houston for any loss suffered because of the failure of plaintiffs to faithfully perform the written contract; and, Houston is entitled to judgment against plaintiffs Smith-Donaho.

Counsel should submit a journal entry which conforms with this opinion, within fifteen days.

---

to do the work he contracted to do because of the unusual weather conditions at the time that he encountered there, as I see it."

13. Of the 40 miles of pipe laid by plaintiffs they only conducted proper clean up operations on about 9 miles.

14. The Prime Contract (PX–1) provided in part: "(20) Cleaning Up After Work: As soon as the work is completed, Contractor shall without extra charge clear the premises of debris and waste material and equipment remaining from the work * * *"; and, the Specifications of Pipe Line Construction required in part (Sheet 10): "* * * If due to frost, wet weather or other causes, the Contractor is unable to satisfactorily complete the backfill at time of lowering in, when conditions permit, he shall dress up the backfill to the satisfaction of the Engineer. Terraces shall be restored to their original contour to approval of the landowner or tenant. Provisional acceptance and partial payments for work done shall not relieve Contractor from all work necessary to put the backfill, right of way and other roads and lands used by him in proper order."

15. See "24. Damage Claims", Sheets 10, 11, subparagraphs I. through VI. of Specifications of Pipe Line Construction as to settlement and liability for damages (PX–1).