No. 02-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 69N

FISH ON A FEATHER, INC.
d/b/a/ RENT-A-WRECK OF BILLINGS,

Plaintiff and Respondent,

v.

DESIREE BELL,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 2000-1015
The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jack E. Sands, Billings, Montana

For Respondent:

Kevin T. Sweeney, Sweeney & Healow, Billings, Montana

Submitted on Briefs: August 29, 2002

Decided: April 3, 2003

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Desiree Bell (Bell) appeals from the District Court's ruling holding her responsible for the costs of repair for a rental car and for the rental car company's attorney's fees. We reverse and remand.

## ISSUES

¶3 Bell presents the following issues on appeal:

1. Did the District Court err in concluding that the parties were precluded as a matter of law from orally modifying the written car rental agreement?

2. Did the District Court err in its calculation of damages?

3. Did the District Court err in awarding attorney's fees to Fish on a Feather (FF), doing business as Rent-A-Wreck, when FF did not request attorney's fees in its complaint?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 FF is a Montana corporation that owns and operates a car rental business in Billings. Bell is a resident of Harlem, Blaine County, Montana.

¶5 On March 25, 2000, Bell and her family were shopping in Billings when the transmission in their vehicle went out. Upon learning from the automobile repair shop that

2

it would take a few days to repair, Bell signed a rental agreement and rented a car from FF to drive home, a distance of approximately 175 miles.  Bell was the only authorized driver under the contract.

¶6    At the time she entered into the rental agreement, Wes Nussbaum (Nussbaum), owner of FF, reviewed the agreement with Bell.   Among other provisions, Nussbaum explained the optional Damage Waiver (DW) available under the contract.  The DW provided that should the rental car be physically damaged during Bell's rental term, FF would waive all costs of repair or replacement except $500.00.  The relevant sections of this provision read:

> If you elect to purchase DW, and if DW is not voided, we waive our right to collect from you a portion of Physical Damage to the Vehicle. You must pay for DW when you return the Vehicle or when the rental is terminated in order for DW to be effective.  DW is not insurance.  DW is void if: a) the Vehicle is used: (i) by anyone who is not an Authorized Driver, or . . . ; (iv) in furtherance of any illegal purpose or under any circumstance that would constitute a violation of law. . . .

Bell agreed to purchase the DW at an additional cost of $5.00 per day payable upon the vehicle's return.

¶7    Additionally, the contract contained the following clause which requires that any modifications, including extensions of the term of the contract, must be in writing.

> Modifications.  No term of this Agreement can be waived or modified except by a writing that we have signed.  If you wish to extend the rental period, you must return the Vehicle to our rental office for inspection and written amendment by us of the due-in date.  This Agreement constitutes the entire agreement between you and us.  All prior representations and agreements between you and us regarding this rental are merged into this Agreement.

3

¶8     Based upon the repair time estimated by the repair shop, Bell entered into the rental car agreement with FF on March 25 with a contractual obligation to return the car on March 27.  When Bell called the auto repair shop on March 27, she was informed her vehicle was not ready.  She called Nussbaum, explained that her vehicle was not ready, and requested that her rental period be extended for a day.  Nussbaum agreed, without requiring that the vehicle be returned or a written modification to the contract be executed.  The following day, the repair shop told Bell her car would be ready on Thursday, March 30.  Bell called Nussbaum again and the parties orally agreed that Bell would return the car by close of business on March 30.   No written modification of the contract was performed.  However, there is no dispute that the two informal extensions were verbally accepted by Nussbaum.

¶9     On March 30, Bell learned that her employer Ken Nicholson and his sixteen-year old daughter, Kassie, were going to Billings.  Bell testified at trial that she called Nussbaum and asked him if it would be acceptable for Kassie to return the rental vehicle.  Bell asserts that Nussbaum agreed but informed her that if the car did not arrive by 6:00 p.m., he would charge her another day's rental fee.  Nussbaum denies authorizing Kassie to return the vehicle.

¶10    While traveling from Harlem to Billings and just outside of Roundup, Kassie was involved in an automobile accident in which the rental car sustained extensive damage.  Bell claims that she called Nussbaum at approximately 5:15 p.m. to inform him that she expected Kassie to arrive by 6:00 p.m, and that Nussbaum told her at that time that he had been notified by the Highway Patrol of Kassie's accident.  Nussbaum told Bell to contact her

4

insurance company, which she did. The company informed her, and she in turn informed Nussbaum, that it would not provide coverage because she had purchased coverage under the rental agreement, *i.e*., the DW; therefore, the rental agreement coverage would be responsible.

¶11 Bell testified that, at that time, she offered to pay the fees owed to FF under the rental contract, including the rental fee, the DW fee and the $500.00 DW deductible, but that Nussbaum refused to talk to her about it.

¶12 On April 3, 2000, without Bell's permission or knowledge, FF used Bell's debit card imprint provided when she rented the car to make seven withdrawals of $96.00 each from Bell's bank account. Nussbaum testified that he intended to apply this money toward the amount Bell owed under the rental agreement and the towing charges. Bell learned of these debits from her bank, rather than from Nussbaum, and had these withdrawals canceled.

¶13 On April 5, 2000, FF's insurance adjuster, PurCo, notified Bell that the DW in her rental contract had been voided for failure to comply with the terms of her contract. PurCo's letter also demanded a $5,558.74 payment from Bell. Bell attempted to resolve this matter with PurCo but was unsuccessful.

¶14 On June 15, 2000, and again without Bell's permission or knowledge, FF withdrew $9,180.15 from Bell's account. Bell also arranged for this withdrawal to be reversed.

¶15 On October 24, 2000, FF filed a Complaint against Bell alleging that, under the rental contract, Bell is responsible for all damages and other costs associated with the damage and repair of the rental vehicle. FF sought damages in the amount of $9,756.15, the costs of the

lawsuit, and "[s]uch other and further relief as the Court deems appropriate." A bench trial was conducted on August 16, 2001. The court's Findings of Fact and Conclusions of Law were entered on September 13, 2001, and its Judgment was entered on November 15, 2001. The District Court concluded that Bell was responsible for various costs associated with the vehicle's damage and awarded judgment to FF in the amount of $8,755.49. This amount included specific vehicle-related costs and FF's attorney's fees of $750.00. Bell filed a timely appeal.

¶16    It is undisputed that FF has not sought payment of the amounts due under the rental contract at any time nor has Bell paid such contractual obligations.

## STANDARD OF REVIEW

¶17    We review the findings of a district court sitting without a jury to ascertain whether the findings are clearly erroneous. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that a mistake has been committed. The standard of review of a district court's conclusions of law is whether the court's interpretation of the law is correct. *Graveley Simmental Ranch Co. v. Quigley*, 2003 MT 34, 314 Mont. 226, ___ P.3d ___ (citations omitted).

## DISCUSSION

¶18    The first issue we address is whether the District Court erred in concluding that the parties were precluded as a matter of law from orally modifying the written car rental agreement. We conclude the court erred.

6

¶19     Bell alleges that the rental contract was orally modified on three occasions.  She testified that on Monday, March 27, the original due date under the rental agreement, she called Nussbaum and informed him that her car was not ready and that she would need the rental car for another day.  Nussbaum agreed.

¶20     On Tuesday, March 28, Bell called the auto repair shop and was told her car would not be ready until Thursday, March 30.  She called Nussbaum again and requested a two-day extension.  Nussbaum agreed.

¶21     Lastly, on Thursday, March 30, the day the car was to be returned, Bell testified that she called Nussbaum and asked if Kassie Nicholson, a high school student with a driver's license, could return the car.  Bell presented phone records from her place of business confirming that three calls were made from her extension to FF on March 30.  Bell maintains that Nussbaum agreed to allow Kassie to drive the car, explaining that if the car was not returned by 6:00 p.m., he would charge Bell for another day's rental.

¶22     Nussbaum advances several arguments to counter Bell's allegations and to support his claim.  First, while Nussbaum agrees that he orally extended the term of Bell's contract twice without requiring that the rental extension terms of the contract be met, he strenuously denies that he authorized an unauthorized driver, *i.e.*, Kassie, to return the vehicle.  Moreover, he asserts that such a verbal authorization violates a firmly held company policy.

¶23     Second, he argues that if such an oral agreement was reached, it violates § 28-2-702, MCA, which reads:

> **Section 28-2-702. Contracts which violate policy of the law--exemption from responsibility**. All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility from violation of law, whether willful or negligent, are against the policy of the law.

Nussbaum asserts that it is the policy of Montana not to permit uninsured persons to drive and that because Kassie was an uninsured driver, an oral contract authorizing her to drive was an illegal and unenforceable oral contract. He further claims that his insurance does not provide coverage for him in the event one of his cars is damaged in an accident while driven by an unauthorized driver under the age of twenty-five.

¶24 Third, he maintains that, under § 28-2-1602, MCA, any alleged oral modification purporting to allow Kassie to return the car was not fully performed and therefore was never executed. The statute provides:

> **Section 28-2-1602. How written contract may be altered by parties.**
> A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise.

¶25 Lastly, he asserts that because Bell did not pay for the DW when he regained possession of the vehicle, the DW is void and Bell is responsible for all costs associated with the vehicle repair.

¶26 The District Court heard conflicting testimony from the parties pertaining to whether Nussbaum orally authorized Kassie to drive the rental car and therefore orally modified the contract. Rather than resolve the factual question of whether permission had been granted, however, the court concluded as a matter of law that the parties were precluded from orally modifying the written rental agreement. In its Findings of Fact, the District Court stated:

8

> The Court finds whether or not Bell received permission from Nessbaum [sic] to have Cassie [sic] return the car is not dispositive, because it is unrefuted Bell did not pay the damage waiver, nor did she return the car to Plaintiff, and thus has not fully performed any oral modification of the agreement in any case.

The court relied on § 28-2-1602, MCA, in making this finding.

¶27 The District Court correctly interpreted this Court's case law to require that the terms of any oral agreement, altering a written agreement, must be fully performed before the oral agreement is an "executed oral agreement" under this statute. *Ikovich v. Silver Bow Motor Car Co.* (1945), 117 Mont. 268, 157 P.2d 785. The court found that because neither Bell nor Kassie had returned the car, that the required full performance had not occurred and, therefore, the oral agreement had not been executed.

¶28 Based upon its factual findings, the District Court concluded, as a matter of law, that 1) FF's claim for damages stands because Bell never paid for the DW; 2) the alleged oral agreement authorizing Kassie to return the car was not fully performed as required under § 28-2-1602, MCA, because neither Bell nor Kassie returned the car to FF, and the oral agreement was therefore not executed; and 3) the alleged oral agreement authorizing Kassie to return the car was against public policy in Montana because Kassie was an uninsured driver. As a result, the District Court concluded that the alleged oral contract was an illegal and unenforceable oral contract.

¶29 We disagree with the District Court's findings and its conclusions. We will first address the court's factual findings pertaining to Bell's failure to perform the contractual obligations.

9

¶30   The District Court concluded that Bell failed to perform her contractual obligations by failing to pay the DW fee and failing to return the rental car. While we agree that these were Bell's obligations under the original contract, the circumstances underlying these obligations warrant discussion.

¶31   Under the original contract and the two verbal term extensions, Bell was obligated to return the vehicle by 6 p.m. on March 30. It is undisputed that Bell did not personally return the vehicle. Rather, Bell arranged for Kassie to perform this service. It is also undisputed that as Kassie was performing it, she was involved in an automobile accident caused by another driver. The car could not be driven as a result of the accident, and therefore the damaged car was returned to FF by a tow truck.

¶32   Did Bell or Kassie personally return the car to FF? No. Was the car returned to FF on the date agreed upon? Yes. Bell never agreed to return the car undamaged. In fact, in recognition of the possibility that rental cars might be involved in automobile accidents, Nussbaum offered and Bell accepted the DW option. It appears to us when a rental car has been seriously damaged in an accident, it is highly probable that the person who rented the vehicle will not be the person who physically returns the vehicle. That is what happened in this case. The DW clause does not say it is void in the event the damaged vehicle is returned by a tow truck. We conclude that, under these circumstances, the contractual obligation to return the vehicle was performed.

¶33   The larger question that would ordinarily remain to be answered is whether Bell allowed an unauthorized driver to use the vehicle and thus breached the rental agreement.

10

However, FF has never asserted such a claim against Bell. FF alleges only that Bell failed to pay the DW and failed to personally return the vehicle. While FF's claim that Bell did not personally return the vehicle might imply the existence of a contract breach, the fact remains that FF never stated such a breach of contract claim against Bell for allowing an unauthorized driver to operate the vehicle. Moreover, we find it significant that FF concedes it consented to two oral modifications of the contract. Thus, it has waived its right to insist that the failure of Bell to secure a written modification of the contract constitutes a breach in any event. Therefore, a determination of whether Bell breached the contract by allowing Kassie to return the vehicle need not be made.

¶34 Next, we address the District Court's conclusion that FF's claim must stand because Bell failed to pay for the DW. Under the contract, at the time Bell returned the car, she was obligated to pay the costs associated with renting the vehicle. These costs, according to FF's fee entries on the contract, would have included the daily fee of $34.99 for five days (May 25 - May 30), the DW fee of $5.00 per day for five days, and any fuel surcharges and miscellaneous taxes. Additionally, she would have had to pay the $500.00 deductible under the DW since the vehicle had been seriously damaged.

¶35 Bell claims to have tried to perform this contractual obligation upon learning that the car had been returned to FF by the towing contractor. She asserts that FF would not accept her offer of payment or discuss it with her. She also claims to have attempted to discuss the matter with FF's representative, PurCo, without satisfaction. Whether Bell offered to pay and Nussbaum rejected the offer is a significant factual matter that was not resolved by the

11

District Court. It is therefore premature to conclude that Bell failed to perform under the contract by failing to pay for the DW. If FF rejected a tendered offer of full performance under the contract, Bell's failure to pay the DW may be excused. Unfortunately, the court did not resolve this factual question.

¶36 Lastly, we reject the argument that the alleged oral agreement authorizing Kassie to return the car was against public policy in Montana because Kassie was an uninsured driver. It is undisputed that under this rental car agreement the DW was requested. Therefore, the issue is whether the DW was waived or is enforceable.

¶37 We therefore conclude that the District Court erred in concluding that the parties were precluded as a matter of law from orally modifying the written car rental agreement and in failing to determine whether Bell attempted to perform the contract by tendering all sums due under the contract. We therefore reverse and remand to the District Court for further proceedings consistent with this discussion.

¶38 In light of the fact that we are reversing the District Court's judgment and remanding for a resolution of factual issues, the award of damages in FF's favor is obviously vacated. Typically, we would not under these circumstances address alleged irregularities in the calculation of damages. However, we will do so here to a limited extent so as to forestall another appeal on the issue of damages should the District Court again rule in favor of FF based upon its findings of fact.

¶39 First, if the court finds that Bell attempted full performance under the contract but was precluded from giving it by the actions of FF, then there will be no contractual basis for an

12

award of the cost of vehicle repair against Bell, as the DW will be valid and enforceable by Bell. If, however, the court finds that Bell failed to tender performance of her DW obligations, then the court will again be obligated to assess the damage to the vehicle. In this event, we caution the court to refrain from relying for its damage calculation upon unsubstantiated and self-serving "supplemental repair" bills prepared by a company owned by Nussbaum, and submitted to Bell after FF's insurer had already performed and delivered to Bell an independent estimate of the full cost of repairs.

¶40 Lastly, we vacate the District Court's award of attorney fees to FF on the grounds that having reversed and remanded this matter, there is no current judgment in favor of FF.

¶41 For the foregoing reasons, we reverse and remand this matter to the District Court for further proceedings in accordance with this Opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART